[No. B164375. Second Dist., Div. Seven. May 29, 2003.]

CYNTHIA PARRIS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent,
LOWE'S H.I.W., INC., Real Party in Interest.

**COUNSEL**

R. Rex Parris Law Firm, R. Rex Parris, James S. Kostas; Marlin & Saltzman, Stanley D. Saltzman, Louis M. Marlin; Mazursky & Schwartz, Arnold W. Schwartz and Mark D. Bradley for Petitioners.

No appearance for Respondent.

Littler Mendelson and Gregg C. Sindici for Real Party in Interest.

## OPINION

**PERLUSS, P. J.**—Cynthia Parris and Willie Lopez filed a lawsuit "on their own behalf and on behalf of all similarly situated" against Lowe's H.I.W., Inc., alleging violations of California's wage and hour laws regarding overtime compensation. Parris and Lopez thereafter moved (a) for leave to communicate with potential class members prior to class certification and for approval of the content of their proposed communication and (b) to compel discovery of the names and addresses of potential class members. The trial court denied both motions. Parris and Lopez petitioned this court for a writ of mandate directing the trial court to reverse its orders, and we issued an order to show cause.

Precertification communication with potential class members, like prefiling communication, is constitutionally protected speech. A blanket requirement of judicial approval for such communications would constitute an impermissible prior restraint on speech. Accordingly, Parris and Lopez's motion for judicial approval of their proposed communications was unnecessary; and the trial court should have dismissed the motion on that ground, rather than denying it. The trial court also erred in denying Parris and Lopez's discovery motion without expressly weighing the actual or potential abuse of the class action procedure that might be caused by permitting the discovery, on the one hand, against the rights of the parties, on the other hand. We therefore remand for a new hearing on that motion.

### FACTUAL AND PROCEDURAL BACKGROUND

In their complaint, filed on October 29, 2001, Parris and Lopez allege causes of action for failure to pay overtime compensation and compensation at time of termination in violation of the Labor Code, declaratory relief, an accounting, injunctive relief and unfair competition. The two named plaintiffs purport to represent the class of "all persons who are, or have been, employed by defendant Lowe's H.I.W., Inc. . . . in the capacity as non-exempt department managers, customer service pros, customer service specialists and customer service representatives . . . in any of Lowe's home improvement centers located in the state of California." The complaint alleges it has been the business practice of Lowe's "to require all members of the plaintiff class to complete more assignments than can be accomplished in the time allocated in their shifts. Employees failing to complete their assignment, clock out but continue to work 'off the clock' until they have completed their assignments." The putative class has not yet been certified.

Parris and Lopez moved in the trial court for an order permitting precertification notice to potential class members and for approval of the proposed

notice and method of dissemination. The proposed notice, which was attached to the moving papers, contains the following information: A class action lawsuit has been filed on behalf of current and former Lowe's employees alleging Lowe's has failed to pay overtime compensation to certain of its hourly employees (a three-paragraph description of plaintiffs' contentions and a one-paragraph summary of Lowe's defense are also included); individuals who worked for Lowe's at any time since October 29, 1997, in an hourly position may be members of the proposed class; the attorneys for the plaintiffs in the lawsuit (who are identified in the proposed notice) wish to gather information from the recipients of the notice regarding the nature of their work at Lowe's, including any overtime they may have worked; recipients of the notice are under no obligation to contact plaintiffs' counsel; the attorneys for Lowe's (who are also identified in the proposed notice) or other representatives of Lowe's may also wish to discuss the case; recipients of the notice are under no obligation to provide information or to discuss the matter with attorneys for Lowe's or with any supervisor or manager at Lowe's; "[y]our employer may not retaliate against you in any manner for refusing to provide information"; and further information regarding the lawsuit is available at <www.lowesovertimelawsuit.com>, a Web site set up by plaintiffs' counsel.

In support of their motion, Parris and Lopez relied on *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867 [212 Cal.Rptr. 773] (*Atari*), which held precertification communication with potential class members is appropriate, with prior court approval, in the absence of a showing of actual or threatened abuse of the class action process. Parris and Lopez also moved to compel responses to interrogatories they had previously served, seeking the names and addresses of current and former Lowe's employees, potential class members who were to be the recipients of the proposed notice.

Lowe's opposed the motions, arguing Parris and Lopez had not established a legitimate precertification need to communicate with potential class members or to discover their identities and personal information. Lowe's also opposed the motion to compel on procedural grounds.

After extensive briefing and a combined hearing on the two motions the trial court issued a minute order denying both motions without explanation or comment. Parris and Lopez filed a petition for writ of mandate on January 23, 2003. We issued an order to show cause on January 30, 2003. Briefing was completed on April 1, 2003. At our request the parties have submitted supplemental letter briefs addressing whether precertification communications with potential class members constitutes speech protected by the First Amendment for which no prior court approval is necessary, consistent with federal and state constitutional restrictions on prior restraints of speech.

## DISCUSSION

*1. Precertification Communication with Potential Class Members Is Speech Protected by the First Amendment and the California Constitution and Requires No Prior Court Approval*

### A. General Free Speech Principles

#### i. The First Amendment

"[A]s a general matter, 'the First Amendment means that government has no power to restrict expression because of its meaning, its ideas, its subject matter, or its content.'" (*Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60, 65 [103 S.Ct. 2875, 2879, 77 L.Ed.2d 469] (*Bolger*).)[1] "For noncommercial speech entitled to full First Amendment protection, a content-based regulation is valid under the First Amendment only if it can withstand strict scrutiny, which requires that the regulation be narrowly tailored (that is, the least restrictive means) to promote a compelling government interest. [Citations.]" (*Kasky v. Nike, Inc., supra,* 27 Cal.4th 939, 952 (*Nike*).)

The preferred place of freedom of speech in the pantheon of constitutional values cannot be overstated: The right to freedom of speech is "one of the cornerstones of our society." (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241 [101 Cal.Rptr.2d 558].) Uninhibited speech "is more than self-expression; it is the essence of self-government." (*Garrison v. Louisiana* (1964) 379 U.S. 64, 74-75 [85 S.Ct. 209, 216, 13 L.Ed.2d 125].)

Under the First Amendment, however, commercial speech enjoys a more limited degree of protection. "[T]he [federal] Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression." (*Bolger, supra,* 463 U.S. at pp. 64-65 [103 S.Ct. at p. 2879].) Lawyer advertising falls in the category of constitutionally protected

---

[1] The First Amendment's fundamental right to freedom of speech is fully protected by the due process clause of the Fourteenth Amendment from unwarranted restriction by state action. (*McIntyre v. Ohio Elections Comm'n* (1995) 514 U.S. 334, 336, fn. 1 [115 S.Ct. 1511, 1514, 131 L.Ed.2d 426]; *Gitlow v. New York* (1925) 268 U.S. 652, 667 [45 S.Ct. 625, 630, 69 L.Ed. 1138]; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 952 [119 Cal.Rptr.2d 296, 45 P.3d 243].)

commercial speech. (*Bates v. State Bar of Arizona* (1977) 433 U.S. 350 [97 S.Ct. 2691, 53 L.Ed.2d 810].)[2]

"Commercial speech doctrine, in the context of advertising for professional services, may be summarized generally as follows: Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely." (*In re R.M.J.* (1982) 455 U.S. 191, 203 [102 S.Ct. 929, 937, 71 L.Ed.2d 64].) "The First Amendment principles governing state regulation of lawyer solicitations for pecuniary gain are by now familiar: 'Commercial speech that is not false or deceptive and does not concern unlawful activities . . . may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest.' [Citations.] Since state regulation of commercial speech 'may extend only as far as the interest it serves,' [citation] state rules that are designed to prevent the 'potential for deception and confusion . . . may be no broader than reasonably necessary to prevent the' perceived evil. [Citation.]" (*Shapero v. Kentucky Bar Assn.* (1988) 486 U.S. 466, 472 [108 S.Ct. 1916, 1921, 100 L.Ed.2d 475].)

### ii. *The California Constitution*

■ In terms more expansive than the First Amendment, article I, section 2, subdivision (a) of the California Constitution guarantees, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The protection afforded speech by this provision is broader than that provided by the First Amendment. (*Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116] [state constitutional guarantee is "more definitive and inclusive than the First Amendment"]; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 493 [101 Cal.Rptr.2d 470, 12 P.3d 720] (*Gerawan*).) Specifically, "article I's right to freedom of speech, unlike the First Amendment's, is 'unlimited' in scope. [Citations.] Whereas the First Amendment does not embrace all subjects, article I does indeed do so . . . ." (*Gerawan*, at p. 493.)

"The wording of this section is terse and vigorous, and its meaning so plain that construction is not needed. The right of the citizen to freely speak,

---

[2]Although some aspects of the proposed communication with potential class members—for example, the description of the pending lawsuit and summary of employees' rights to overtime compensation under the Labor Code—would appear to fall outside the traditional definition of commercial speech, it is not unfair to construe the entire document, as does Lowe's, as an advertisement for the services of the plaintiffs' lawyers.

write, and publish his sentiments is unlimited, but he is responsible at the hands of the law for an abuse of that right. He shall have no censor over him to whom he must apply for permission to speak, write, or publish, but he shall be held accountable to the law for what he speaks, what he writes, and what he publishes. It is patent that this right to speak, write, and publish, cannot be abused until it is exercised, and before it is exercised there can be no responsibility." (*Dailey v. Superior Court* (1896) 112 Cal. 94, 97 [44 P. 458].)

■    The state and federal Constitutions do not impose "*different boundaries* between the categories of commercial and noncommercial speech" (*Nike, supra,* 27 Cal.4th at pp. 959, 969), and the state Constitution does not prohibit imposition of after-the-fact sanctions for misleading commercial advertising. (*Ibid.*) But the Supreme Court in *Gerawan* held that within its " 'unlimited' " scope, expressly embracing "all subjects," California Constitution, article I's right to freedom of speech protects commercial speech, "at least in the form of truthful and nonmisleading messages about lawful products and services," as fully as it does political and ideological speech. (*Gerawan, supra,* 24 Cal.4th at pp. 493-494.)

In *Gerawan* the California Supreme Court observed that the right to free speech is "put at risk both by prohibiting a speaker from funding speech that he otherwise would fund and also by compelling him to fund speech that he otherwise would not fund." (*Gerawan, supra,* 24 Cal.4th at p. 491.) Nonetheless, under the United States Supreme Court's commercial speech doctrine as applied in *Glickman v. Wileman Brothers & Elliott, Inc.* (1997) 521 U.S. 457 [117 S.Ct. 2130, 138 L.Ed.2d 585], the Supreme Court held that the California Plum Marketing Program, which compels all plum producers to fund generic advertising about their product, does not violate the First Amendment rights of dissenting growers. (*Gerawan,* at pp. 497-508.)

After surveying the development of the United States Supreme Court's commercial speech doctrine, as well as California's independent constitutional protection for the right to free speech, however, the *Gerawan* court concluded there is no difference under the state Constitution between the protection provided political and ideological speech and commercial speech, at least with respect to truthful and nonmisleading messages about lawful products and services. (*Gerawan, supra,* 24 Cal.4th at pp. 493-494.) Accordingly, without more, although valid under the First Amendment, under California Constitution, article I, it is not permissible to "compel[] one who engages in commercial speech to fund speech in the form of advertising that he would otherwise not." (*Gerawan,* at pp. 509-510.) The court found the dissenting grower's complaint pleaded factual allegations that were sufficient to at least implicate its article I right to freedom of speech against the

California Plum Marketing Program and remanded the case, which was before it following a judgment on the pleadings in favor of the Secretary of the California Department of Food and Agriculture, to the Court of Appeal to determine in the first instance whether a violation of the grower's article I right to freedom of speech had been established. (*Gerawan,* at p. 517.)[3]

Writing for the court in *Gerawan,* Justice Mosk recognized that its conclusions concerning the full protection for commercial speech afforded by the California Constitution "have not been anticipated completely and in their entirety in prior California judicial decisions. That is because article I's free speech clause and commercial speech were not considered on their own terms in any of these prior decisions, but only, for example, through the distorting lens of the United States Supreme Court's commercial speech/noncommercial speech dichotomy in First Amendment jurisprudence."[4] (*Gerawan, supra,* 24 Cal.4th at p. 497, fn. 6.)

## B. *Atari and Howard Gunty*

In the only published decisions addressing the propriety of precertification notice to potential class members, two Courts of Appeal have upheld the role of the trial court in screening the content of the proposed notice and authorizing the communication only if the court determines "there is no specific impropriety." (*Atari, supra,* 166 Cal.App.3d at pp. 870-871; *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 575-576 [105 Cal.Rptr.2d 896] (*Howard Gunty*).) In *Howard Gunty* Division Four of this court held leave of court was required before a notice could be sent to potential class members in order to identify a new class representative after the original class representative had been found inadequate. (*Howard Gunty,* at pp. 575-576.) The court concluded the necessity to regulate class action proceedings trumped free speech concerns, holding: "Plaintiffs contend that since their communication with potential class members is protected commercial speech under the First Amendment, the only limitation is that it not be false, misleading, or deceptive. (See *Shapero v.*

---

[3]On remand the Court of Appeal concluded the grower's right of free speech outweighed the asserted governmental interest in the California Plum Marketing Program and held that objecting plum growers and handlers were entitled to withhold the portion of their California Plum Marketing Board assessment allocated to advertising and other speech-related functions of the Board. Review was again granted, and the case is now pending before the Supreme Court. (*Gerawan Farming, Inc. v. Lyons,* review granted Mar. 20, 2002, S104019.)

[4]As the first (and most recent) example of a prior decision that had not considered California Constitution, article I's free speech clause and commercial speech on their own terms, the court cited *Leoni v. State Bar* (1985) 39 Cal.3d 609, 614, footnote 2 [217 Cal.Rptr. 423, 704 P.2d 183], which it described as "dealing with commercial speech under both article I's free speech clause and the First Amendment's, but, in effect, construing and applying only the First Amendment's free speech clause and not article I's." (*Gerawan, supra,* 24 Cal.4th at p. 497, fn. 6.)

*Kentucky Bar Assn., supra*, 486 U.S. at p. 472 [108 S.Ct. at p. 1921].) We disagree. In the context of a class action, it is the court's authority and duty to exercise control over the class action to protect the rights of all parties, and to prevent abuses which might undermine the proper administration of justice. (See *Gulf Oil Co. v. Bernard* [(1981)] 452 U.S. [89,] 100-103 [101 S.Ct. at pp. 2200-2201, 68 L.Ed.2d 693].)" (*Id.* at p. 581.) Accordingly, it held that precertification communications are properly subject to prior court approval: "Precertification communication carries the potential for abuse. Thus, any 'order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.' [Citation.] The trial court should identify the potential abuses and weigh them against the rights of the parties under the circumstances. [Citation.]" (*Howard Gunty, supra*, 88 Cal.App.4th at p. 580.)

### C. *Requiring Judicial Approval for Precertification Communications Constitutes an Impermissible Prior Restraint of Protected Speech*

■ We respectfully disagree with the free speech analysis of our colleagues in Division Four.[5] The requirement of court approval for precertification communications is a classic example of a prior restraint on speech. (*Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546, 554 [95 S.Ct. 1239, 1246, 43 L.Ed.2d 448] [prior restraint on speech exists if in order to engage in protected speech, (1) advance approval of the government is required, (2) the approval depends on affirmative action by a government official and such action requires the exercise of judgment, and (3) the government official may render that judgment based on the content of the speech].)

■ Although "[p]rior restraints are not unconstitutional *per se*" (*Southeastern Promotions, Ltd. v. Conrad, supra*, 420 U.S. at p. 558 [95 S.Ct. at p. 1246]), prior restraints have long been held presumptively unconstitutional. (See *Bantam Books, Inc. v. Sullivan* (1963) 372 U.S. 58, 70 [83 S.Ct. 631, 639, 9 L.Ed.2d 584].) "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." (*Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 559 [96 S.Ct. 2791, 2803, 49 L.Ed.2d 683].) Prior restraints on speech are permissible only in certain narrow circumstances constituting "exceptional cases." (*Near v.*

---

[5]The *Atari* court, which preceded *Howard Gunty* by 15 years, cited no authority in support of its holding that court approval is required before the parties to a purported class action may contact potential class members and expressly declined to consider whether the parties had a First Amendment right to communicate with such persons. (*Atari, supra,* 166 Cal.App.3d at p. 873.)

*Minnesota* (1931) 283 U.S. 697, 716 [51 S.Ct. 625, 631, 75 L.Ed. 1357].) The party seeking to enjoin speech "thus carries a heavy burden of showing justification for the imposition of such a restraint." (*Organization for a Better Austin v. Keefe* (1971) 402 U.S. 415, 419 [91 S.Ct. 1575, 1578, 29 L.Ed.2d 1].)

In a footnote in *Va. Pharmacy Board v. Va. Consumer Council* (1976) 425 U.S. 748, 771-772, footnote 24 [96 S.Ct. 1817, 1830-1831, 48 L.Ed.2d 346], the Supreme Court suggested the "hardy" qualities of commercial speech "may also make inapplicable the prohibition against prior restraints." (See also *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557, 571, fn. 13 [100 S.Ct. 2343, 2354, 65 L.Ed.2d 341] ["We have observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it"]; but see *New York Magazine v. Metropolitan Transp. Auth.* (2d Cir. 1998) 136 F.3d 123 [applying traditional prior restraint principles to invalidate decision by transit authority to remove from sides of busses advertisements poking fun at New York City Mayor Rudolph Giuliani].)

However the Supreme Court may ultimately resolve that issue in terms of First Amendment jurisprudence, under the California Constitution imposition of a prior restraint on commercial speech bears the same presumption of unconstitutionality and carries the same heavy burden of justification as does a prior restraint on other forms of protected expression. (*Dailey v. Superior Court, supra,* 112 Cal. at p. 97 ["this right to speak, write, and publish, cannot be abused until it is exercised"]; *Gerawan, supra,* 24 Cal.4th at pp. 513-514 [Cal. Const., art. I's free speech clause "does indeed grant a right against prior restraint . . . . But without any limitation thereto . . . . Likewise, that article I's free speech clause grants a freedom of speech against prior *restraint* [with respect to commercial speech] does not preclude a right against what we may call 'prior compulsion.' One does not speak freely when one is restrained from speaking. But neither does one speak freely when one is compelled to speak" (fn. omitted)].) To be sure, not all advance restrictions on speech are invalid prior restraints under the California Constitution. In *Wilson v. Superior Court, supra,* 13 Cal.3d at page 662, the court acknowledged that " 'an injunction restraining speech may issue in some circumstances to protect private rights [citation] or to prevent deceptive commercial practices [citation].' " (Accord, *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 143 [87 Cal.Rptr.2d 132, 980 P.2d 846].) A generalized and abstract interest in the proper administration of justice or fear of *potential* abuse, however, does not warrant imposition of a

blanket requirement of prior judicial approval for precertification communications with potential class members.[6]

In concluding that, absent specific evidence of abuse, an order prohibiting or limiting precertification communication with potential class members by the parties to a putative class action is an invalid prior restraint, we find persuasive the reasoning of the United States Court of Appeals for the Fifth Circuit, which has held an order "restricting communications by named plaintiffs and their counsel with actual and potential class members not formal parties to the suit . . . violated the First Amendment to the Constitution." (*Bernard v. Gulf Oil Co.* (5th Cir. 1980) 619 F.2d 459, 463 (*Bernard*), affd. on other grounds *sub nom. Gulf Oil Co. v. Bernard, supra,* 452 U.S 89 [101 S.Ct. 2193, 68 L.Ed.2d 693].) The district court had issued an order stating in part, "all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of this Court." (*Bernard,* at p. 464, fn. 4.) The order was based on suggestions contained in 2 Wright and Miller, Manual for Complex Litigation (1973 ed.) section 1.41, "a publication widely used by federal judges" (*Bernard,* at p. 464), which recommended "that district courts adopt local rules imposing 'in every potential and actual class action' substantially the ban on communication that is here involved, and in the absence of a local rule impose the ban by an order entered promptly after the filing of any actual or potential class action." (*Id.* at p. 466, fn. omitted.)

A panel of the court of appeals initially upheld the order by a divided vote. (*Bernard, supra,* 619 F.2d at p. 463, citing *Bernard v. Gulf Oil Co.* (5th Cir. 1979) 596 F.2d 1249, vacated, 604 F.2d 449.) On rehearing in bank, the full

---

[6]When engaging in precertification communications, as is equally true with any communication with a prospective client, a member of the State Bar of California must comply with the requirements of rule 1-400 of the Rules of Professional Conduct and abide by its prohibitions on false, misleading and deceptive messages or face possible disciplinary action. In this regard, however, we disagree with the suggestion by Lowe's that the proposed communication at issue in this case constitutes a "solicitation" prohibited by rule 1-400(C). Rule 1-400(A)(4) defines "communications" to include "unsolicited correspondence from a member or law firm directed to any person or entity." Rule 1-400(B)(2) defines a "solicitation" as any communication "delivered in person or by telephone, or [¶] . . . directed by any means to a person known to the sender to be represented by counsel in a matter which is a subject of the communication." (Rule 1-400(B)(2)(a), (b).) Rule 1-400(C) provides, "A *solicitation* shall not be made by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, unless the solicitation is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California." (Italics added.) Because neither the proposed notice to class members nor the Web site prepared by plaintiffs' counsel is to be "delivered in person or by telephone," it is not prohibited by rule 1-400.

court of appeals invalidated the order as an unconstitutional prior restraint. (619 F.2d at p. 467.) The court found "the order has the 'immediate and irreversible' effect of a prior restraint" (*id.* at p. 471), that was not justified by "the interests of a civil litigant." Rejecting the contention the order was necessary to prevent abuses of the class action process, the court held "the general presumption against prior restraints is not mitigated by a claim that the fair and orderly administration of justice is at stake." (*Id.* at p. 474.)

The Fifth Circuit recognized the oft-cited "potential abuse" in class action litigation, but emphasized that "[a]n exception to the constitutional principles limiting prior restraints cannot be constructed on the foundation of asserted potential abuses in class actions generally. In the first place, the hypothesis that abuses occur with such frequency and impact that prophylactic judicial intervention is required must be examined with the same scrutiny as other factual hypotheses. Neither the Constitution nor the judge's duty of constitutional fact finding is subsumed by the application of the pejorative word 'abuse.' Not everything that tends to make a class action less convenient than ideal, or more difficult to manage, is an 'abuse.' The same is true of such activities as solicitation of clients, or funds, or community support, that may be constitutionally protected but, at least to some, may appear only marginally ethical. . . . [¶] . . . [¶] In any event, the potential abuse rationale is at odds with the requirement that a prior restraint is only justified in exceptional circumstances and by a showing of direct, immediate and irreparable harm." (*Bernard, supra,* 619 F.2d at pp. 475-476, fn. omitted.)[7]

Because no judicial approval was needed for the proposed precertification communication with potential class members, Parris and Lopez's motion for leave to engage in such communications was unnecessary and should have been dismissed by the trial court on that ground. ■ A trial court may rule on the propriety of precertification communications only if the

---

[7]The in bank decision was reviewed by the Supreme Court in *Gulf Oil Co. v. Bernard, supra,* 452 U.S. 89, 99 [101 S.Ct. 2193, 2201-2202, 68 L.Ed.2d 693] (*Gulf Oil*). The Supreme Court declined to reach the constitutional issue and affirmed the Fifth Circuit's ruling based on a finding the challenged order violated the Federal Rules of Civil Procedure. However, the Supreme Court did not disapprove the Fifth Circuit's analysis. Indeed, it recognized the existence of constitutional concerns and stated, "Although we do not decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at a minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." (*Gulf Oil,* at pp. 103-104 [101 S.Ct. at pp. 2201-2202].)

opposing party seeks an injunction, protective order or other relief.[8] If such a motion is brought, the trial court may impose restrictions on such communications only "by a showing of direct, immediate and irreparable harm." (*Bernard, supra,* 619 F.2d at p. 476.) Broad-based assertions that a proposed informational notice is "unfair," contains some inaccurate statements, or is presented in a misleading form are simply insufficient bases for imposition of judicial limitations on protected speech in the form of a prior restraint.[9] Even then, any restrictions " 'must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact' " on the right to free speech. (*Ibid.*) Finally, "the restraint 'must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech.' [Citation.]" (*Id.* at p. 477.)

2. *Parris and Lopez's Motion to Compel Discovery Must Be Remanded for a New Hearing and Balancing of the Potential for Abuse Against the Parties' Rights*

███ Parris and Lopez also moved to compel discovery of the names and addresses of potential class members and management personnel following Lowe's refusal to provide that information in response to interrogatories. Although parties are free to communicate with potential class members before class certification, when they seek to enlist the aid of the court in doing so, it is appropriate for the court to consider "the possibility of abuses in class-action litigation." (See *Gulf Oil, supra,* 452 U.S. at p. 104 [101 S.Ct. at p. 2202] ["We recognize the possibility of abuses in class-action litigation, and agree with petitioners that such abuses may implicate communications with potential class members"].) Although the balancing procedure described in *Howard Gunty, supra,* 88 Cal.App.4th 572, 580, may not be used to justify a prior restraint of speech, in our view it is properly employed in ruling on discovery motions in aid of communications with potential class members. Therefore, when ruling on Parris and Lopez's discovery motion, in addition to applying the normal rules governing discovery motions, the

---

[8]The proposed informational notice contains the legend, "This correspondence is being sent to you with the permission of the Superior Court. The granting of permission does not constitute an endorsement . . . ." Just as Parris and Lopez were not obligated to seek court approval before communicating with potential class members, so too they are not entitled to seek the court's imprimatur for their notice.

[9]Lowe's, for example, argues the proposed notice in this case is "substantively infirm" because Parris and Lopez's contentions "are always placed ahead of the information and contentions of the defendants" and suggests requiring a "split page format." Lowe's also argues the notice is misleading because it fails to include a sufficient nuanced discussion of the limits of the lawyer-client privilege as applied to conversations between potential class members and class counsel. These complaints fall far short of the demonstration of direct, immediate and irreparable harm required before a prior restraint on protected speech can be justified.

trial court must also expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances.

The record before us gives no indication the trial court engaged in the requisite balancing procedure, despite the urging of both parties that it do so. Accordingly, we remand the matter for the trial court to apply the proper standard in ruling on Parris and Lopez's discovery motion. (See *Howard Gunty, supra,* 88 Cal.App.4th at p. 580 [remanding because trial court failed to identify potential abuses and weigh them against the rights of the parties].) In ruling on the motion the trial court is directed to prepare "a carefully crafted order demonstrating [its] weighing of any abuses or potential abuses against the rights of the parties, including potential class members, and the integrity of the litigation process." (*Id.* at p. 581.)

## DISPOSITION

The order to show cause is discharged and the petition for writ of mandate is granted. The matter is remanded to the trial court with directions to vacate the orders denying petitioners' motions, and for further proceedings not inconsistent with this opinion. Petitioners are to recover their costs.

Johnson, J., and Munoz, J.,* concurred.

---

, *Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.