[No. B194004. Second Dist., Div. Three. Jan. 25, 2007.]

FIRST AMERICAN TITLE INSURANCE COMPANY et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JEFFREY ALBERT SJOBRING et al., Real Parties in Interest.

COUNSEL

Bryan Cave, Charles A. Newman, Jason E. Maschmann, Howard O. Boltz and Jennifer A. Jackson for Petitioners.

No appearance for Respondent.

Bernheim Law Firm, Bernie Bernheim, Justin A. Shiau; Kick Law Firm, Taras Kick and Graig Woodburn for Real Parties in Interest.

OPINION

**CROSKEY, J.**—If a class action representative plaintiff is not—and never was—a member of the class he purports to represent, may he obtain precertification discovery from the defendants for the express purpose of identifying a member of the class who is willing to become a named plaintiff and pursue the action? As the current plaintiff is, in effect, a stranger to the action, we conclude the grant of such discovery would sanction an abuse of the class action procedure. We therefore conclude the trial court's order granting the discovery was an abuse of discretion, and grant defendants' petition for writ relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2004, plaintiff Jeffrey Albert Sjobring bought a house. The house was not newly constructed; Sjobring bought it from its then current owners. Sjobring's loan broker obtained a purchase money loan for Sjobring from Wilmington Finance. The seller's real estate agent selected the escrow company and the title insurer, First American Title Insurance Company.[1] Indeed, Sjobring had wanted to use a different title company, but the seller's agent and the escrow company selected by the seller's agent had been adamant about using First American. Sjobring suspected that the seller's agent might have received a kickback, either from the escrow company or First American. At some point, either during or immediately after closing, Sjobring's loan agent commented to Sjobring that several of the escrow costs

---

[1] As we shall discuss, there are many First American entities. The closing notice provided to Sjobring after his purchase stated that the title policy was issued by First American Title Company of Los Angeles. It is not clear, however, which First American entity actually issued Sjobring's title policy.

for which he had been charged seemed suspiciously high, including the cost of title insurance. Sjobring made no complaint at this time.

In November 2004,[2] the Colorado Division of Insurance began an investigation into unlawful title insurance practices, in which it uncovered a reinsurance kickback scheme.[3] Pursuant to the scheme, certain homebuilders, lenders and realtors formed their own reinsurance companies, known as "captive insurers." They would refer all of their title insurance business to a particular title company if that title company agreed to "reinsure" the title policies with the captive insurer. The title company would forward premiums to the reinsurer, yet, in practice, the reinsurer did not accept any risk and the premium payments far exceeded any minimal risk the reinsurer may have accepted. In short, the reinsurance agreement was simply a way for the title insurer to transfer funds to the captive insurer as a payment for the referral of customers. In January 2005, the California Department of Insurance began its own investigation into the same practice. On February 21, 2005, Colorado announced that it had reached a settlement with First American Title Insurance Company by which that entity agreed to refund $24 million to consumers *nationwide*, and also agreed to end the practice.

Four days later, Sjobring filed the instant action, purporting to sue on behalf of himself, all others similarly situated, and the general public. He named as defendants First American Title Company of Los Angeles, Wilmington Finance, and numerous Doe defendants. He alleged causes of action for breach of fiduciary duty, constructive fraud, unjust enrichment, violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), unfair business practices, and declaratory relief. Sjobring's "introductory allegations" explained, "This class action is brought by plaintiff charging that title insurers in the State of California are paying money for referral business from *lenders*. These payments to *lenders* are rewards for channeling business to them. These kickbacks may be disguised as payments for bogus reinsurance which is purchased from captive insurers operated by the firms sending business to the title insurers." (Italics added.) Sjobring alleged that he was "directed in part through his lender to purchase a title

---

[2] The investigation may have begun as early as the summer of 2004.

[3] Sjobring has submitted documents relating to the Colorado investigation, and that of other states, in support of his return to the petition for writ of mandate. Defendants moved to strike these documents, as they were not before the trial court. As we conclude these documents are, in fact, harmful to the position taken by Sjobring, we consider his reliance on such documents to constitute an admission which we have considered in reaching our decision on this matter. We therefore have denied defendants' motion to strike.

insurance policy from defendant First American Title Company of Los Angeles."[4] He alleged, on information and belief, that First American Title Company of Los Angeles paid part of his premium to Wilmington Finance as a payment for the referral of his business. Sjobring's class allegations defined the class as all persons "[w]ho paid in whole or in part for a title insurance policy, from First American Title Company of Los Angeles and/or Does 1 through 249, which provided coverage for property located in the State of California . . . [f]or whom part of the premium paid for the title insurance policy was received by Wilmington Finance, Inc., and/or Does 250 through 500."

The California Department of Insurance investigation continued. On July 20, 2005, the Department of Insurance announced a $37.8 million settlement with nine different title insurance companies.[5] First American Title Insurance Company accounted for $20 million of the settlement. Some $15 million of the First American Title Insurance Company settlement consisted of the share of the Colorado settlement payable to California consumers. This amount was described as "a full refund of the ceded premium," which was to be refunded to some 38,000 individuals.[6] The remaining $5 million was a penalty obtained by the California Department of Insurance. The investigation and settlement encompassed reinsurance agreements in effect from January 1997 through December 2004. During this period, First American Title Insurance Company had issued more than five million title insurance policies in California. In other words, *less than one percent* of First American Title Insurance Company's customers were victims of the reinsurance scheme and entitled to refunds under the settlement. The press release announcing the settlement issued by the California Department of Insurance identified a list of builders, realtors and lenders who were implicated in the reinsurance scheme. Wilmington Finance was not among them.

---

[4] We note that this allegation is directly contradicted by Sjobring's deposition testimony, in which he stated that *the seller's agent* and *the escrow company* (which had been selected by the seller's agent) had recommended First American. Indeed, Sjobring testified that he had decided to have his attorney represent him in the transaction, rather than allowing the seller's agent to represent both parties to the sale. The seller's agent "insisted that if I wasn't going to use him, he said, 'Then you have to use [the escrow company].' And he also insisted on me using the title company that I used." Sjobring has chosen to include his entire deposition as part of the record in this writ proceeding; there is no indication that the deposition was before the trial court at the time it ruled on the challenged discovery motion.

[5] The settlement was not finalized until November 2, 2005.

[6] The California Department of Insurance initially indicated First American Title Insurance Company was involved in 30,544 improper transactions. When First American Title Insurance Company and First American Homebuilders Reinsurance Company subsequently made payments, refunds were made to 38,294 customers in California.

On September 26, 2005, the president and chief executive officer of Wilmington Finance executed a declaration stating that Wilmington Finance had not entered into any reinsurance agreements with any First American entities and that Wilmington Finance had not been paid any compensation by First American entities for the referral of title insurance business. In light of this evidence, on October 24, 2005, Sjobring requested the dismissal of the action against Wilmington Finance, without prejudice.

On November 1, 2005, Sjobring filed his first amended complaint. The only difference between the first amended complaint and Sjobring's original pleading was the omission of the cause of action for breach of fiduciary duty. Despite Sjobring's apparent acknowledgement that Wilmington Finance was not involved, Sjobring still (1) named Wilmington Finance as a defendant; (2) defined the class in terms of kickbacks to Wilmington Finance and Doe defendants; (3) alleged Wilmington Finance had directed him to use First American Title Company of Los Angeles; and (4) alleged First American Title Company of Los Angeles had paid a kickback to Wilmington Finance.

Concurrent with his first amended complaint, Sjobring filed a case management statement. In pertinent part, the statement read, "Plaintiff's counsel is considering the substitution or addition of a class representative. It is possible that no improper kickbacks were directly connected to . . . Sjobring's purchase of title insurance. However, plaintiff may have suffered a direct injury if his title insurance premium was artificially inflated as a result of defendant's practice of paying improper kickbacks on other title insurance policies. [¶] If it is determined that plaintiff Sjobring cannot represent the class, the court should allow plaintiff the opportunity to amend the complaint to 'redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative.' [Citation.]"

On November 30, 2005, Sjobring filed a Public Records Act (Gov. Code, § 6250 et seq.) request with the California Department of Insurance, seeking all documents relating to its investigation of the improper title insurance practices. Although several of the categories of information sought in Sjobring's request specifically referred to the investigation of the First American entities, it was in no way limited to such entities.[7] Of particular note was Sjobring's request for "[a]ll documents which constitute, evidence, memorialize, relate to, and/or refer to the identity of any individual

---

[7] For example, Sjobring sought, "All documents which constitute, evidence, memorialize, relate and/or refer to the identity of any homebuilder, lender, realtor, and/or reinsurance entity alleged by the [California Department of Insurance] to have engaged in improper or illegal title insurance rebating practices . . . ."

(i.e., consumer, homeowner or policyholder) who was allegedly injured by First American's improper title insurance rebating practices." On January 6, 2006, the Department of Insurance rejected Sjobring's request, indicating that the few public documents which his counsel already possessed were the only documents subject to disclosure.[8]

On March 6, 2006, Sjobring amended his complaint to name five additional First American entities as Doe defendants.[9] On April 21, 2006, Sjobring "served extensive discovery requests on the First American defendants. . . . The discovery requests were specifically designed to obtain information regarding the extensive reinsurance kickback scheme involving [the] First American [entities] that was the subject of the [California] Department of Insurance investigation. The discovery also sought basic information regarding the title insurance practices of [the] First American [entities]." Among other information, Sjobring sought the names and addresses of the 38,000 individuals who had received refunds pursuant to the California Department of Insurance settlement. Sjobring would subsequently argue that the list of all individuals who had received refunds would "help plaintiffs identify a suitable class representative and also lead to potential witnesses to First American's improper rebatings, 'kickback' and/or payment practices. Plaintiffs must also contact these individuals to determine whether they received their refunds and, if so (1) how those refunds were received and (2) whether they adequately compensated for damages." The First American entities did not provide the responses for which Sjobring had hoped.

On June 16, 2006, two of the First American defendants,[10] First American Title Insurance Company and First American Homebuilders Reinsurance Company (hereinafter, collectively defendants) moved for summary adjudication of the issues.[11] The motions were based on the facts that defendants had not paid Wilmington Finance for the referral of Sjobring's business; defendants had not done any improper acts; and defendants were not, in fact, "involved in any aspect of [Sjobring]'s title insurance transaction."

On July 3, 2006, Sjobring filed a motion for precertification discovery to seek class representatives. Sjobring sought an order compelling defendants to

---

[8] Darrel Woo, the senior staff counsel who responded to Sjobring's request, added, "As a matter of clarification regarding your request, in the case of this captive title reinsurance case, First American dealt only with homebuilders and not with lenders and realtors."

[9] Sjobring also, apparently, dismissed First American Title Company of Los Angeles.

[10] It appears that all five First American defendants filed similar motions; only two are part of the record on this writ proceeding.

[11] The motions were, in effect, summary judgment motions. They were directed to all causes of action except the CLRA cause of action, which cannot be attacked by summary judgment and must instead by addressed by a "no.merit" motion. (See Civ. Code, § 1781.)

provide to a third party administrator the names and addresses of all California homeowners who were compensated by defendants as part of the settlement with the California Department of Insurance. Sjobring then sought approval for the third party administrator to send a letter to each identified homeowner, informing those individuals of the pendency of this action and asking any individual who would like to serve as a class representative to send an authorization form back to the third party administrator granting permission to be contacted by class counsel. Sjobring's motion explained, "The underlying transaction from which Plaintiff Sjobring brought his claim was based on the payment of an illegal kickback from First American to defendant Wilmington Financ[e]. However, as this case has developed, it appears that First American did not have an illegal kickback scheme with Wilmington Financ[e]. As a result, Wilmington Financ[e] has been dismissed as a defendant. [¶] The dismissal of Wilmington Financ[e] puts plaintiff Sjobring in the position of having his claim subject to unique defenses that other class members may not face, namely that there was not a direct kickback agreement involved in his purchase of title insurance. Defendants have already moved for summary adjudication on this issue. [¶] If there is a potential difference between Sjobring['s] claims and those of the class, he may not be able to serve as an adequate representative for the plaintiff class. [Citation.] [¶] As a result, Sjobring brings the instant motion to allow precertification discovery seeking a new class representative."

Sjobring also filed an ex parte motion to continue the hearing on the summary adjudication motions until after his motion for precertification discovery had been heard. The motion to continue was heard on August 11, 2006. At the hearing, Sjobring conceded that Wilmington Finance did not have a kickback agreement with any First American entity. He argued, however, that he still had two potential theories of liability against the First American entities: first, that perhaps *another* entity had channeled Sjobring into buying his title policy from First American in return for a kickback;[12] and second, that Sjobring was *indirectly* harmed by the reinsurance scheme, in that the reinsurance scheme resulted in elevated premiums for all First American customers "to some extent." The First American entities objected to any continuance, on the basis that "we have a fundamental jurisdictional issue. We don't have a lawsuit here. There is nobody who is in front of the

[12] Sjobring's counsel stated, "We don't know that another entity didn't channel Mr. Sjobring into buying his First American policy." Although Sjobring had testified at deposition that he had suspected the seller's agent of receiving a kickback from First American, the record does not indicate any attempt to name that agent as a defendant.

court as a plaintiff other than a bunch of lawyers looking for a client." The trial court granted the motion to continue the summary adjudication motions.

Defendants then opposed the motion for precertification discovery on the basis that Sjobring had no standing and could not seek defendants' assistance in finding a plaintiff to sue them. Defendants argued that the order sought by Sjobring "would be unprecedented, highly prejudicial to defendants, an invasion of the privacy of defendants' customers, an exploitation of the discovery process, and an invitation to litigation abuse by lawyers looking for clients." Defendants argued that while Sjobring might be entitled to such discovery if he was a member of the class who, due to a change in law, could no longer represent the class, Sjobring was *never* a member of the class alleged in his complaint, and therefore lacked standing to obtain discovery to locate a proper class representative.

In his reply, Sjobring conceded that he is not a member of the class he proposed in his complaint, but argued that he still had standing to bring *other* causes of action against defendants. He argued, "Sjobring is seeking to determine whether another individual or individuals would be interested in stepping forward to represent the class that was proposed in his complaint. But Sjobring still has standing to bring other claims against First American and he could serve as a class representative for a class consisting of First American policyholders who have otherwise been harmed by wrongful practices. Sjobring is just not a good class representative for the 'reinsurance' class." As the settlement with the California Department of Insurance demonstrated that defendants had engaged in wrongdoing against the proposed class, Sjobring argued that California law favors allowing him discovery to obtain a new representative for that class.

At the hearing on the motion, the trial court expressed concern that lawyers not be permitted to file a class action with any random individual named as the class representative, and then use precertification discovery to obtain from the defendant a client who could legitimately represent the class. The court concluded, however, that this case did not present that scenario, because Sjobring had in fact purchased a title insurance policy from a First American entity, and may have mistakenly believed that his policy had been subject to an illegal reinsurance kickback scheme. The trial court ultimately granted the motion for precertification discovery, apparently based on its determination of Sjobring's good faith. The court stated, "Well, Mr. Sjobring thought he might have been [a member of the class]. Turns out Mr. Sjobring was mistaken. I think it's appropriate and consistent with California law to give him some discovery now to see if he can find another representative." The court

approved a letter to be sent by the third party administrator to the recipients of refunds pursuant to the Department of Insurance settlement.

Defendants filed a petition for writ of mandate and request for immediate stay. We granted the stay and issued an order to show cause why the requested relief should not be granted. We now grant the writ petition, and direct the trial court to vacate its order and enter a new and different order denying precertification discovery.

### *ISSUE PRESENTED*

The sole issue presented is whether the trial court abused its discretion by granting Sjobring precertification discovery to find a new class representative. Sjobring argues that he may have standing to assert a kickback in his purchase of title insurance, or that he may have standing to bring a class action on behalf of all First American customers whose premiums might have been increased as a result of the reinsurance kickback scheme. These issues are not relevant to the resolution of the issue before us.[13] That issue can be framed as follows: Can a plaintiff who purports to bring a cause of action on behalf of a class of which he was *never* a member obtain precertification discovery to find a new class representative? Framed as such, the answer must be "no."

### *DISCUSSION*

At issue is whether the trial court abused its discretion in granting precertification discovery. Appellate review of discovery rulings is governed by an abuse of discretion standard. (*Experian Information Solutions, Inc. v. Superior Court* (1996) 138 Cal.App.4th 122, 132 [41 Cal.Rptr.3d 219].)

We first briefly address Sjobring's standing to represent the putative class. "It is elementary that the named plaintiff in a class action must be a member of the class he purports to represent." (*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 146 [121 Cal.Rptr. 637].) In the specific context of unfair business practices actions, plaintiffs who were not members of the class were previously permitted, by statute, to bring class actions on behalf of the general public. (Bus. & Prof. Code, former § 17204.)

---

[13] Similarly of no relevance is whether Sjobring is entitled to discovery, under Code of Civil Procedure section 437c, subdivision (h), in order to oppose the summary adjudication motions. Under that subdivision, Sjobring may be entitled to discovery regarding whether *he* has a cause of action against defendants; the discovery at issue in this proceeding relates to whether *anyone else* does.

In November 2004, the voters approved Proposition 64, which changed this statute. ▪ Now, an individual or entity may bring an unfair business practices class action only if that individual is a member of the class injured by the practice. (Bus. & Prof. Code, § 17204.) ▪ Issues of standing are generally determined by reference to the allegations made in the complaint. (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1111 [34 Cal.Rptr.3d 149].)

In this case, the operative complaint, as amended, alleges a class consisting of all persons "[w]ho paid in whole or in part for a title insurance policy, from [a First American entity or other Doe defendant] which provided coverage for property located in the State of California . . . [f]or whom part of the premium paid for the title insurance policy was received by . . . Does 250 through 500." The gravamen of the complaint is that the First American entities paid kickbacks to lenders for the referral of title insurance business. Sjobring originally alleged that he was a part of this class because Wilmington Finance directed him to use First American Title Company of Los Angeles, and received a kickback for this referral. Sjobring now concedes that this is false.[14] Regardless of whether Sjobring may have another, unpleaded, claim against a First American entity, and regardless of whether Sjobring made his initial allegations in good faith, the fact remains that Sjobring is not, and never has been, a member of the class he sought to represent.[15]

▪ When it is determined that a class representative lacks standing to represent the class, the representative may be granted leave to amend to redefine the class or add new individual plaintiffs, or both. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113].) This rule is usually applied in situations where the class representative *originally* had standing, but has since lost it by intervening law or facts. (E.g., *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 [46 Cal.Rptr.3d 66, 138 P.3d 214] [plaintiff in pending unfair competition case lost standing by intervening adoption of Prop. 64]; *Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.*

---

[14] We again note that, according to his deposition, Sjobring never suspected Wilmington Finance of receiving a kickback from First American. If anything, he suspected the seller's agent of receiving such a kickback. Sjobring, however, has never attempted to amend his complaint to allege that kickbacks were paid to *real estate agents*.

[15] Sjobring suggests that he sought precertification discovery in response to defendants' motions for summary adjudication, in that defendants' motions first raised a challenge to his standing to represent the class. On the contrary, Sjobring was aware, at the time he filed his first amended complaint and case management statement, that he likely lacked standing to represent the class, and might require leave to amend to name a new class representative.

(2006) 143 Cal.App.4th 131 [48 Cal.Rptr.3d 836] [same]; *La Sala v. American Sav. & Loan Assn., supra*, 5 Cal.3d at p. 868 [class action plaintiff challenged defendant's loan acceleration clause; defendant waived enforcement of the clause against plaintiff].) It has also been applied when the class representative had standing when she sent the defendant a demand letter threatening suit, but lacked standing when the suit was filed because the defendant had granted the plaintiff individual relief in response to her demand letter. (*Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 588–589, 596 [200 Cal.Rptr. 38, 676 P.2d 1060].) We do not have such facts here and each of the foregoing cases is distinguishable on that ground.

Sjobring relies on *Branick v. Downey Savings & Loan Assn., supra*, 39 Cal.4th at page 244, for the proposition that, in California, a plaintiff who has never been a member of the class may amend the complaint to substitute in a plaintiff with standing to represent the class. Whether Sjobring should be granted leave to amend his complaint to name a new class representative, if he so moved, is not at issue in this proceeding. Sjobring is apparently unaware of the identity of any member of the alleged class who seeks to become a representative plaintiff in this action. At issue here is whether defendants must provide Sjobring discovery in order to enable him to find a new plaintiff.

█ Two California cases have addressed the issue of precertification discovery of the identity of class members. Both agreed that, in exercising its discretion, the court must weigh the danger of possible abuses of the class action procedure against the rights of the parties under the circumstances. (*Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779 [40 Cal.Rptr.3d 575]; *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 301 [135 Cal.Rptr.2d 90].) In the *Parris* case, the named plaintiffs sought leave to have precertification communication with the class members, and to compel discovery of the names and addresses of potential class members. Division Seven of the Second Appellate District concluded that no leave was required simply to *communicate* with potential class members, but that the trial court abused its discretion in denying the motion to compel discovery "without expressly weighing the actual or potential abuse of the class action procedure that might be caused by permitting the discovery, on the one hand, against the rights of the parties, on the other hand."[16] (*Parris v. Superior Court, supra*, 109 Cal.App.4th at p. 290.) In *Best Buy Stores*, the representative plaintiff

---

[16] The *Parris* court adopted this standard from *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572 [105 Cal.Rptr.2d 896], a case in which the court was concerned about the potential for abuse arising from a class action where the representative plaintiff was "a professional plaintiff." (*Id.* at p. 580.)

was an attorney who had also intended to represent the class. Intervening authority held that a lawyer could not be both a class representative and class counsel. (*Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th at p. 774.) As a result, the plaintiff sought precertification discovery to seek additional class representatives. Division Three of the Fourth Appellate District upheld the trial court's order granting such discovery, on the basis that the trial court had properly engaged in the weighing required by *Parris.* (*Best Buy Stores,* at p. 779.)

In this case, while the trial court did not expressly engage in the *Parris* weighing process, it is unnecessary to remand for the trial court to do so. In light of the complete record presented to this court—including documents submitted by Sjobring which were apparently not before the trial court at the time it ruled on the motion[17]—we have no trouble concluding that the potential abuse of the class action procedure greatly outweighs the rights of the parties under the circumstances.

The instant case began with the Colorado investigation into title insurance abuses. The State of Colorado investigated such abuses, concluded First American entities were involved in an illegal scheme using captive reinsurers, and reached a settlement whereby the First American entities agreed to *fully refund* the overcharges to all affected customers nationwide. *Four days later,* Sjobring filed suit in California, seeking to represent, in effect, the California customers who were entitled to refunds under the Colorado settlement. While Sjobring had obtained title insurance from a First American entity, less than one percent of First American customers in California had been directly affected by the reinsurance scheme. Regardless of whether Sjobring initially had a good faith belief that he was, in fact, the victim of such a scheme by means of a kickback to Wilmington Finance, it is apparent that, by the time he moved to dismiss Wilmington Finance seven months later, he knew that he was not.

Sjobring did not, at this point, dismiss his action or seek leave to amend it to allege facts by which he could state a cause of action against a First American entity. Instead, he continued to pursue the claims of a class of which he was *not* a member. First, Sjobring sought documents relating to the reinsurance scheme from the Department of Insurance. When that avenue proved unfruitful, Sjobring then sought all documents relating to that scheme from the First American entities. The scope of Sjobring's fishing expedition is illustrated by Sjobring's claim that he needed the names and addresses of all individuals implicated by the settlement because he "must . . . contact these

---

[17] See footnote 3, *ante.*

individuals to determine whether they received their refunds and, if so (1) how those refunds were received and (2) whether they adequately compensated for damages." Sjobring had apparently appointed himself enforcement officer for the California Department of Insurance settlement agreement; the fact that Sjobring was, at this time, *an acknowledged stranger* to that agreement did not restrain his efforts in any way.

California law is clear that a representative plaintiff must be a member of the class he seeks to represent. Indeed, Proposition 64 was enacted to prevent abuses of the class action system by " 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.' " (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207].) We cannot permit attorneys to make an "end-run" around Proposition 64 by filing class actions in the name of private individuals who are not members of the classes they seek to represent and then using precertification discovery to obtain more appropriate plaintiffs.

Balanced against this potential abuse of the class action procedure are the rights of the parties under the circumstances. Sjobring's interest in obtaining a proper plaintiff to represent the class is nonexistent. Sjobring is not a member of the class and never has been; he has no cognizable interest in seeing this class action proceed.[18] We acknowledge that the members of the putative class may have an interest in pursuing the class action. However, we are not blind to the fact that this is not a case in which Sjobring has uncovered an apparent wrongdoing that will remain unaddressed without this class action. Indeed, Sjobring only filed his complaint *after* Colorado had entered into a settlement with First American Title Insurance Company providing for full refunds to be made to customers nationwide. The California Department of Insurance similarly sought to make certain California insureds were properly compensated. Any further legal action can be pursued by members of the class, if they so desire. Sjobring makes no argument that any future action they might pursue would be time-barred, or offer any other reason why the class members might be denied relief if *this action* is unable to proceed on their behalf. In short, the potential for abuse of the class action procedure is overwhelming, while the interests of the real parties in interest are minimal. Precertification discovery under these circumstances would be an abuse of discretion.

The case of *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794 [110 Cal.Rptr. 302] does not change our result. In that case, the plaintiffs

---

[18] We again note that while Sjobring may have a cognizable claim against the First American entities, he does not have the claim asserted in this class action.

were defrauded by a seller of goods who sold on an installment plan. The seller assigned the installment contracts to three different financing agencies. The plaintiffs brought a class action against the seller as well as each of the financing agencies, even though their contracts had only been assigned to a single financing agency. The seller defaulted and disappeared, leaving the financing agencies as the only defendants. The two financing agencies not involved with the plaintiffs' contract demurred, on the basis that a class action against multiple defendants can only be maintained against defendants as to whom the class representative has a cause of action. The demurrer was sustained with leave to amend, and the plaintiffs subsequently submitted interrogatories to the demurring defendants, seeking to discover the identity of customers whose installment contracts had been assigned to those defendants.

The Court of Appeal held such discovery appropriate. The court noted that a class action plaintiff who does not adequately represent the class should be granted leave to redefine the class or seek additional plaintiffs. With no further analysis, the court concluded, "It follows that if discovery is necessary in order to do this, it should be made available." (*Budget Finance Plan v. Superior Court, supra,* 34 Cal.App.3d at p. 799.) When the demurring finance companies argued that leave to amend is only granted when the representative plaintiff was *originally* part of the class, the court responded, "The argument from the distinction is not persuasive. Plaintiffs in the case at bench were members of a class allegedly defrauded by a common entrepreneur using a common method. The action is against him as one defendant. His splitting of assignment of the contracts among three finance agencies should not protect those contracts against effective rescission by withholding of the identities of the persons dealing with him." (*Id.* at p. 800.)

While we question the current validity of *Budget Finance*'s apparent blanket authorization of precertification discovery given the subsequent balancing test of *Parris*, it is apparent that *Budget Finance* is distinguishable from the instant case. The *Budget Finance* plaintiffs had been defrauded by the seller in a scheme in which the seller had used three additional defendants. The named plaintiffs were proper representatives of the subclass of plaintiffs whose contracts had been assigned to a single finance company as part of the scheme, and simply sought discovery to obtain *similarly situated* plaintiffs with respect to other finance companies. In the instant case, Sjobring is not, and never has been, a member of the class he sought to represent, and he seeks discovery to obtain a representative plaintiff to cure this defect. This is inappropriate.

## *DISPOSITION*

The petition for writ of mandate is granted. The trial court is directed to vacate its order granting Sjobring's motion for precertification discovery and to enter a new order denying that motion. First American Title Insurance Company and First American Homebuilders Reinsurance Company shall recover their costs in this proceeding. The stay heretofore issued shall be vacated upon issuance of the remittitur in this matter.

Klein, P. J., and Aldrich, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied May 9, 2007, S150781.