[No. B213044. Second Dist., Div. Three. Apr. 30, 2009.]

SAFECO INSURANCE COMPANY OF AMERICA et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LISA KARNAN et al., Real Parties in Interest.

**COUNSEL**

Barger & Wolen, Steven H. Weinstein, Spencer Y. Kook and Peter Sindhuphak for Petitioners.

Horvitz & Levy, John A. Taylor, Jr., Lisa Perrochet and Bradley S. Pauley for Association of California Insurance Companies and Personal Insurance Federation of California as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Coughlin Stoia Geller Rudman & Robbins, Theodore J. Pintar, Kevin K. Green, Thomas R. Merrick; Consumer Watchdog, Harvey J. Rosenfield, Pamela M. Pressley; Roger Brown and Associates and Jay Angoff for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—Safeco Insurance Company of America (Safeco) and First National Insurance Company of America (First National) challenge an order granting a motion by the plaintiffs' class representative, Lisa Karnan, for precertification discovery for the purpose of finding a new class representative. Karnan is not a member of the class she purports to represent. She seeks to identify potential class members and substitute a new class representative in her place. We conclude that the trial court properly exercised its discretion by weighing the potential for abuse of the class action procedure against the rights of the parties in these circumstances and that defendants have shown no error in the granting of the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. Complaint, Demurrer, and Stays

The Proposition 103 Enforcement Project (the Project) filed a complaint against Safeco and First National in January 2002, alleging that defendants charged higher premiums to drivers with no prior automobile insurance coverage or no continuous coverage, in violation of Insurance Code section 1861.02, and that they failed to report their true underwriting practices, in violation of Insurance Code section 1859.[1] The Project alleged counts for (1) violation of section 1859, (2) violation of section 1861.02, and (3) unfair competition. The Project filed the complaint as a representative action under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

Safeco and First National demurred to the complaint, arguing that the action should be dismissed because the challenges to their approved insurance rates were within the exclusive jurisdiction of the Insurance Commissioner (Commissioner). They argued, in the alternative, that the action should be stayed based on the primary jurisdiction doctrine. The trial court determined that the alleged violations were within the primary jurisdiction of the

---

[1] All statutory references are to the Insurance Code unless stated otherwise.

Commissioner, and stayed the action in July 2002. The Commissioner issued an order in December 2002, declining to exercise jurisdiction "because the factual questions presented by the litigation do not require any actuarial or rate making expertise, matters which the California Department of Insurance regularly handles, and matters in which the Commissioner is vested with unique authority. The particular facts necessary to resolve the dispute will best be obtained through the discovery processes available to the Superior Court."

Safeco and First National moved for judgment on the pleadings in November 2003, arguing that the Commissioner had exclusive jurisdiction over the matters alleged in the complaint. They also moved to stay the action pending a decision by the Court of Appeal in *Poirer v. State Farm Mutual Auto Ins. Co.*, in which the trial court had dismissed a similar complaint. The Project opposed the motions, arguing that *Poirer* was distinguishable. The trial court stayed the action in March 2004, pending a decision by the Court of Appeal in *Donabedian v. Mercury Ins. Co.* After that opinion was filed (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968 [11 Cal.Rptr.3d 45]), the trial court continued the stay pending a final decision by the Court of Appeal in *Poirer.* The Court of Appeal filed a nonpublished opinion in *Poirer* on October 15, 2004 (B165389). The trial court lifted the stay in this action in December 2004.

### 2. *Motions for Judgment on the Pleadings*

Safeco and First National moved for judgment on the pleadings in January 2005, arguing that the Project had suffered no actual injury and therefore had no standing to sue for violation of the UCL after Proposition 64.[2] The trial court granted the motion as to the UCL count on March 22, 2005, allowing 30 days' leave to amend to substitute a plaintiff who had suffered an actual injury.[3] On April 19, 2005, the trial court stayed the action for 60 days pending any writ review by the Court of Appeal. The Project did not seek writ review of the ruling and did not amend the complaint at that time.

Safeco and First National filed a separate motion for judgment on the pleadings in March 2005, arguing that the alleged violations of sections 1859 and 1861.02 did not give rise to a private right of action. The trial court determined that section 1861.10, subdivision (a) created a private right of

---

[2] We judicially notice the motion for judgment on the pleadings filed on January 7, 2005. (Evid. Code, § 452, subd. (d).)

[3] The California Supreme Court later resolved a split in the Courts of Appeal by deciding, consistent with the trial court's ruling here, that the new standing requirements imposed by Proposition 64 applied to pending cases. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].)

action for a violation of section 1861.02, and denied the motion.[4] Safeco and First National petitioned the Court of Appeal for a writ of mandate, challenging the denial of the motion. We filed an opinion in March 2006, in consolidated writ proceedings in this and another action (*Ryan v. Farmers Ins. Exchange* (Super. Ct. L.A. County, No. BC297437) (*Ryan*)), holding that there is no private right of action for a violation of section 1861.02. (*Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 853–859 [40 Cal.Rptr.3d 653] (*Farmers*).) We directed the trial court to vacate its order denying the motions for judgment on the pleadings in the two actions and enter new orders granting the motions without leave to amend. (*Id.* at pp. 859–860.) This decision did not impact the viability of the Project's cause of action for unfair competition.

### 3. *Motion for Leave to Conduct Discovery*

In order to proceed with the unfair competition claim, however, the Project had to address the issue of its lack of standing, given the passage of Proposition 64. It did so by filing a motion in July 2006 for leave to conduct discovery for the purpose of identifying a prospective plaintiff who satisfied the new standing requirements imposed by Proposition 64. Safeco and First National opposed the motions, arguing that our opinion in *Farmers, supra*, 137 Cal.App.4th 842, disposed of the entire action, and that the trial court was required to enter a judgment on the pleadings without leave to amend and deny the motion for leave to conduct discovery. The trial court filed an order on September 7, 2006, granting judgment on the pleadings on that basis and denying the motion for leave to conduct discovery. The trial court filed an identical order in the *Ryan* action.[5]

Ryan petitioned the Court of Appeal for a writ of mandate (*Ryan v. Superior Court* (Dec. 14, 2000, B194498)), challenging the order in the *Ryan* action. Safeco and First National joined in the petition, challenging the order in this action. We filed an order on November 16, 2006, pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], stating that we were considering the issuance of a peremptory writ of mandate in the first instance directing the trial court to vacate the orders. We stated that *Farmers, supra*, 137 Cal.App.4th 842, did not address the question whether the plaintiffs could amend their UCL counts, and that the California Supreme Court in *Branick v. Downey Savings & Loan Assn.*

---

[4] We judicially notice the motion for judgment on the pleadings filed on March 25, 2005, and the order dated June 15, 2005, denying the motion. (Evid. Code, § 452, subd. (d).)

[5] We judicially notice the order filed on September 5, 2006, in the *Ryan* action. (Evid. Code, § 452, subd. (d).)

(2006) 39 Cal.4th 235 [46 Cal.Rptr.3d 66, 138 P.3d 214] (*Branick*), filed after our opinion in *Farmers*, held that Proposition 64 did not necessarily preclude an amendment to a complaint to substitute a new plaintiff who suffered an injury in fact. We stated that it was reasonable for the plaintiffs to delay amending the complaints during the pendency of the prior writ proceedings, and that the trial court should consider the merits of the plaintiffs' motions under *Branick*.

The trial court filed an order on December 8, 2006, vacating its prior order granting judgment on the pleadings and resetting a hearing on the motion for leave to conduct discovery. We filed our opinion in *First American Title Ins. Co. v. Superior Court* (2007) 146 Cal.App.4th 1564 [53 Cal.Rptr.3d 734] (*First American*) in January 2007, holding that a plaintiff who was not a class member was not entitled to precertification discovery for the purpose of identifying a new class representative, in the circumstances of that case. The trial court conducted hearings on the Project's motion for leave to conduct discovery in March and June 2007, and took the matter under submission. The court stated that if it denied the motion, it would allow the Project 90 days to file an amended complaint.

The trial court filed an order on August 21, 2007, denying the motion for leave to conduct discovery. Balancing the "potential for abuse of the discovery process" against the interests of the Project and the putative class members, the court stated that the potential for abuse was "virtually nonexistent" because the Project qualified as a representative plaintiff when it filed the complaint, long before Proposition 64 was enacted. The court stated further, however, that the Project had no interest in the continued prosecution of this action because it was not a member of the alleged class and that the Project had not shown that a future action would be time-barred or that the putative class members would be denied relief if this action did not proceed. The court concluded that the potential for abuse outweighed the interests of the parties, and therefore "reach[ed] the admittedly harsh conclusion that discovery should not be available under these facts." The court stated that there was a controlling question of law as to which there were substantial grounds for difference of opinion, and invited appellate resolution of that question pursuant to Code of Civil Procedure section 166.1. In an order filed on September 13, 2007, the court allowed the Project until November 19, 2007, to amend the complaint.

The Project petitioned the Court of Appeal for a writ of mandate, challenging the denial of its motion for leave to conduct discovery, but withdrew its petition after the filing of a first amended complaint.

### 4. First Amended Complaint

Plaintiffs' counsel filed a first amended class action complaint on October 31, 2007, naming Karnan as the representative of a class of California residents who purchased automobile insurance from defendants and who were surcharged based on the lack of prior insurance or lack of continuous coverage. Karnan alleged a single count under the UCL. She alleged that defendants' conduct was unlawful because it violated sections 1859 and 1861.02, and that their conduct was unfair and fraudulent.[6] She sought an injunction, restitution, disgorgement of money, and a constructive trust.

Karnan alleged that she purchased automobile insurance from Safeco in November 2003, that her six-month premium was $277, and that her coverage expired in October 2004. She alleged that when she renewed her policy in February 2005, her six-month premium increased to $365.10 because of her lapse in coverage.

Karnan served demands for the production of documents in November 2007, relating to defendants' determination of insurance rates and consideration of lack of prior insurance and lack of continuous coverage. She moved to compel the further production of documents in January 2008, and served special interrogatories and a second set of document demands.

### 5. Summary Judgment Motion and Motion for a Protective Order

Safeco and First National moved for summary judgment in January 2008. They argued that Karnan had not suffered an injury in fact or lost money or property as a result of any act alleged in the complaint, as required by Proposition 64. They presented evidence that Karnan was insured by Safeco from March 7, 2001, until September 7, 2001, that her coverage lapsed due to nonpayment of premiums from the latter date until the policy was reinstated on October 9, 2003, and that her coverage lapsed again on January 7, 2004, due to nonpayment of premiums.[7] Their evidence showed that she obtained a

---

[6] Karnan distinguished defendants' alleged improper consideration of lack of continuous coverage with any insurer from their acknowledged consideration of continuous coverage with defendants and provision of a "persistency discount." She alleged that the latter practice was permissible and did not challenge that practice.

[7] Safeco and First National noted that $277, which Karnan alleged to be the amount of her six-month premium in November 2003, was actually the sum of the amount unpaid and owing on Karnan's first installment payment for that six-month period plus the amount of her unpaid second installment.

new policy effective on August 14, 2004, that she maintained coverage until November 22, 2006, when her policy lapsed due to nonpayment of premiums, that her policy was reinstated on December 9, 2006, and that she maintained coverage until December 9, 2007. They argued that the evidence showed that Safeco did not take into consideration as a rating factor her lack of prior insurance or lack of continuous coverage, except for purposes of determining whether a "persistency discount" applied.

Safeco and First National moved for a protective order in February 2008, seeking to restrict the scope of discovery to the issue of whether Karnan satisfied the new standing requirements of Proposition 64. Karnan filed her opposition to the motion in February 2008. In her opposition, Karnan did not argue that she had suffered an injury in fact because Safeco increased her premium due to a lapse in coverage, as alleged in the complaint. Instead, she argued that Safeco refused to sell her a policy after her coverage had lapsed in January 2004, so she purchased a six-month policy from another insurer for $137 more than she had paid for her Safeco policy. She argued that the reason that Safeco refused to sell her a policy was her lack of continuous coverage, and that after she established continuous coverage through her policy with another insurer, Safeco agreed to insure her again at a lower rate. She argued that her payment to another insurer of $137 more than she would have paid to Safeco was an injury in fact for purposes of Business and Professions Code section 17204.

Karnan filed her opposition to the summary judgment motion in June 2008. She argued that she had suffered an injury in fact for the same reason that she had asserted in opposition to the motion for a protective order. She also argued that even if the court determined that she had not suffered an injury in fact, she was entitled to conduct discovery to identify a class member willing to prosecute the action.

At the hearing on the summary judgment motion on June 25, 2008, the court stated that Karnan's claim differed from and was not typical of the class claim alleged in the complaint, that she was never a class member, and that she therefore could not maintain the class action. The court stated that it would grant the summary judgment motion on the grounds stated in the motion, but also stated that it would not "enter anything" until after considering Karnan's request for leave to conduct discovery, which should be made by noticed motion.[8] The register of actions, which we judicially notice (Evid.

---

[8] The court stated, "I'm going to grant the motion for summary judgment for all the reasons stated in the moving papers," and ordered defendants to submit a proposed order. It stated further, "I am not going to enter a judgment, although I do want to get a proposed judgment, but I'm not going to enter anything until I get your motion and have ruled on it and we'll see where we go."

Code, § 452, subd. (d)), indicates that the summary judgment motion was granted, although the court did not enter a written order ruling on the motion at that time.

### 6. *Motion for Precertification Discovery*

Karnan filed a motion for precertification discovery in July 2008 together with a motion by the Project for reconsideration of the denial of its prior motion for leave to conduct discovery. They argued that they were entitled to conduct discovery for the purpose of identifying a class member who could serve as class representative, and that the recent opinion in *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273 [71 Cal.Rptr.3d 441] (*CashCall*) had clarified the law on this issue. Karnan proposed that a third party administrator send a letter to affected customers to be identified by Safeco and First National notifying them of this action and of "their right to opt-out of any discovery which would disclose their contact information to plaintiff's counsel." The trial court conducted a hearing on the motions in August 2008. After further briefing, the court filed a minute order on October 31, 2008, stating that Karnan's motion was granted and that a formal order would follow.[9]

The trial court filed a signed order on November 4, 2008. The order began by stating that the court had granted summary judgment against Karnan's claims on June 25, 2008, but had not summarily adjudicated the claims of the absent class members whose interests were implicated by the motion for precertification discovery. It stated that Karnan might have been substituted in the action in good faith, but that as early as February 2008 she had no reasonable basis to believe that she had standing because at that time she abandoned her argument that she had been overcharged by Safeco. It stated that Karnan should have moved for precertification discovery at that time and that her continued pursuit of merits discovery after she had no reasonable basis to believe that she had standing was an abuse of the discovery process.

The order then discussed the rights of the parties. It stated that Karnan had no interest in the continued prosecution of the case because she was not harmed by the conduct alleged in the complaint, but that the rights of the putative class members were implicated. It stated that the class members could not know whether their prior lack of insurance or lack of continuous coverage had resulted in an increase in their premium unless the court

---

[9] The court did not expressly rule on the Project's motion for reconsideration.

allowed discovery, that many class members' claims would be barred by the four-year statute of limitations if this action did not proceed, and that it was likely that the class members' claims would not be redressed if the action did not proceed. It stated further that Karnan "has presented a strong offer of proof, supported by what appears to be direct evidence, to the effect that the defendant had a surcharge policy based on a prior lack of insurance," and that the apparent merit of the complaint supported granting the motion for precertification discovery. The order concluded, "the court finds that the rights of the putative class members in this case outweigh the past, and the potential for further, abuse of the discovery process." The court therefore granted the motion for precertification discovery and allowed Karnan four months to conduct discovery to find a new class representative.

The trial court filed an order on November 14, 2008, stating that the order granting the motion for precertification discovery involved controlling questions of law as to which there were substantial grounds for difference of opinion, and invited appellate resolution of those question pursuant to Code of Civil Procedure section 166.1. The court also stayed all proceedings in this action, including discovery, for 60 days to allow defendants time to challenge the order by way of a writ petition.

### 7. *Petition for Writ of Mandate*

Safeco and First National petitioned this court for a writ of mandate, challenging the order granting the motion for precertification discovery. We issued a temporary stay order on December 31, 2008, staying all trial court proceedings pending our consideration of the petition or further order of this court. We determined that the issues raised deserved immediate appellate review and, on January 7, 2009, issued an order to show cause and continued the stay of all trial court proceedings.

### 8. *Further Trial Court Proceedings*

The trial court filed an order on January 5, 2009, purporting to rule on the summary judgment motion, despite our temporary stay of all trial court proceedings. The order stated that the undisputed facts showed that Karnan's premiums never increased after a lapse of coverage, contrary to the allegations of the complaint. It stated that Karnan's claim that defendants had denied her coverage was not alleged in the complaint and was not typical of

the class claim alleged in the complaint. The order stated further: "The motion for summary judgment is well-taken and deserves to be granted. At this juncture, however, the court is treating Defendants' motion for summary judgment as a motion to disqualify Plaintiff Lisa Karnan from representing the class and grants that motion."[10]

Plaintiffs' counsel sent a letter to the trial court advising it of our temporary stay order of December 31, 2008, and our order to show cause and stay order of January 7, 2009. The trial court responded by entering a minute order on January 14, 2009, stating that its order disqualifying Karnan as class representative "was made before the writ petition was filed but signed after the tempory [sic] stay order was issued. As such, the court believes it was proper to sign the order."[11]

## CONTENTIONS

Safeco and First National contend (1) a plaintiff who is not and never was a member of the class alleged in a UCL action cannot be allowed to conduct precertification discovery for the purpose of finding a substitute class representative, as a matter of law; and (2) even if the trial court must weigh the potential for abuse of the class action procedure against the rights of the parties, the record compels the conclusion that the motion for precertification discovery motion should have been denied.

## DISCUSSION

### 1. Private Person's Standing to Sue Under the UCL

California voters approved Proposition 64 on November 2, 2004. The voters found that some private attorneys had misused the unfair competition laws by filing "frivolous lawsuits," "lawsuits where no client has been injured in fact," "lawsuits for clients who have not used the defendant's product or

---

[10] We judicially notice the order disqualifying plaintiff Lisa Karnan as class representative filed on January 5, 2009, pursuant to defendants' request. (Evid. Code, § 452, subd. (d).)

[11] We judicially notice the letter from plaintiffs' counsel dated January 8, 2009, and the minute order filed on January 14, 2009, pursuant to defendants' request. (Evid. Code, § 452, subd. (d).) A written order becomes legally effective upon its filing in the case. (*Badella v. Miller* (1955) 44 Cal.2d 81, 85 [279 P.2d 729].) The filing of the order on the summary judgment motion, and the subsequent minute order, during the time that all trial court proceedings were stayed violated our temporary stay order, regardless of whether the trial court had previously conceived making such an order. We therefore will direct the trial court to vacate those two orders.

service, viewed the defendant's advertising, or had any other business dealing with the defendant," and "lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision." (Prop. 64, § 1, subd. (b)(1)–(4), reprinted in Historical and Statutory Notes, 4D West's Ann. Bus. & Prof. Code (2008 ed.) foll. § 17203, p. 409.) The voters' intent in enacting Proposition 64 was to limit such abuses by "prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact" (*id.*, § 1, subd. (e)) and by providing that only the California Attorney General and local public officials are authorized to file and prosecute actions on behalf of the general public (*id.*, § 1, subd. (f)). (*Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at p. 228.)

■ Proposition 64 restricted a private person's standing to sue under the UCL by amending Business and Professions Code sections 17203 and 17204. Former section 17204 stated that an action could be prosecuted "by *any person* acting for the interests of itself, its members or the general public." (Stats. 1993, ch. 926, § 2, pp. 5198–5199, italics added.) As amended by Proposition 64, section 17204 now states that a private person has standing to sue for relief under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Section 17203 states that a private person may sue on behalf of others "only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure," which governs class actions. As already noted, *Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at page 227, held that Proposition 64's new standing requirements applied to pending cases. Thus, plaintiffs who sued on behalf of the general public before the measure passed, such as the Project, lost standing as a result of the measure's passage.

■ *Branick, supra*, 39 Cal.4th 235, held that the ordinary rules governing the amendment of complaints, and their relation back for purposes of the statute of limitations, governed motions to amend by plaintiffs who lost their standing as a result of Proposition 64 and sought to substitute new plaintiffs with standing. (39 Cal.4th at p. 239.) *Branick* rejected the argument that to allow the substitution of plaintiffs in those circumstances would permit misuse of the UCL and undermine the initiative measure's policy objectives. *Branick* stated that the policy objectives of Proposition 64 were fully achieved by applying the measure to pending cases and that an additional rule barring amendments to comply with the new standing requirements would not further any goal articulated by the voters. (*Branick, supra*, at p. 241.) *Branick* stated that existing remedies for malicious prosecution, abuse of process, and

frivolous litigation conduct (Code Civ. Proc., § 128.7) offered some protection against frivolous actions. (*Branick, supra*, at p. 241.) *Branick* stated further that because under the former law an uninjured person had standing to sue on behalf of the general public, the substitution of a plaintiff with standing could not "fairly be described as permitting plaintiffs' attorneys to 'benefit from . . . impermissible actions.' " (*Id.* at p. 242.)

*Branick* then discussed the ordinary rules governing the amendment of complaints and rejected the argument that the plaintiffs should not be permitted to substitute a new plaintiff because their failure to name that plaintiff originally was not a mistake. (*Branick, supra*, 39 Cal.4th at p. 243.) *Branick* stated that no such rule exists, and that courts have permitted plaintiffs who have been determined to lack standing or who lost their standing after the complaint was filed to substitute new plaintiffs with standing, provided that the amended complaint does not " 'state facts which give rise to a wholly distinct and different legal obligation against the defendant.' [Citation.]" (*Ibid.*) *Branick* did not discuss whether plaintiffs in those circumstances should be allowed to conduct discovery to identify new plaintiffs with standing.

### 2. *Precertification Discovery to Identify Potential Class Members*

■ A class representative who is not a class member or is otherwise unqualified to serve as class representative may, in a proper case, move for precertification discovery for the purpose of identifying a new class representative. California courts have recognized that such a motion for precertification discovery presents a potential for abuse of the class action procedure, but also implicates the rights and interests of potential class members on whose behalf the complaint was filed.

*Parris v. Superior Court* (2003) 109 Cal.App.4th 285 [135 Cal.Rptr.2d 90] (*Parris*) held that a trial court ruling on a motion to compel precertification discovery to identify potential class members must "expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances." (*Id.* at pp. 300–301.) The plaintiffs in *Parris* moved to compel responses to interrogatories seeking the names and addresses of potential class members in an action for violation of wage and hours laws. The purpose of the discovery was not to identify a substitute class representative, but to allow the plaintiffs to serve notices on the potential class members informing them of the litigation and requesting information relevant to the action. (*Id.* at p. 291.) *Parris* held that precertification communication with potential class members was protected free speech and could not be subject to prior restraint "absent specific evidence of abuse" and

" 'a showing of direct, immediate and irreparable harm.' [Citation.]" (*Id.* at pp. 298, 300.) *Parris* held further, however, that when a party seeks to enlist the court's assistance in communicating with potential class members, the court must engage in the prescribed weighing process. (*Id.* at pp. 300–301.) Because the trial had denied the motion to compel without engaging in the required weighing process, *Parris* directed the court to vacate its order and reconsider the motion. (*Ibid.*)

*Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772 [40 Cal.Rptr.3d 575] (*Best Buy*) involved a plaintiff who was disqualified from serving as both class representative and class counsel in an action for violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), unfair competition, and unjust enrichment. The plaintiff moved for an order compelling the defendant to serve a notice on potential class members informing them of the litigation and the need for a new class representative. (137 Cal.App.4th at pp. 774–775.) The trial court granted the motion by ordering the defendant to provide the names and addresses of potential class members to a third party administrator who would serve the notices. (*Id.* at p. 775.) *Best Buy* stated that such discovery to identify a suitable class representative was proper. (*Id.* at p. 779.) *Best Buy* held that the trial court properly applied the weighing test from *Parris, supra,* 109 Cal.App.4th 285, and did not abuse its discretion in granting the motion. (*Best Buy, supra,* at p. 779.)

*First American, supra,* 146 Cal.App.4th 1564, involved a plaintiff who originally alleged that he was a member of the class alleged in the complaint, but later conceded that he was never a class member. (*Id.* at pp. 1571, 1574.) The complaint alleged counts against an insurer and a title company for constructive fraud, unjust enrichment, violation of the Consumer Legal Remedies Act, unfair competition, and declaratory relief. (*First American,* at pp. 1567, 1569.) The plaintiff filed the complaint after the Colorado Division of Insurance had announced a settlement with the title company defendant, providing for full refunds to customers nationwide for the same alleged wrongful conduct, and after the California Department of Insurance had begun an investigation into the same alleged practice. (*Id.* at pp. 1567, 1577.) The California Department of Insurance later announced a settlement with several title insurers, including the title company defendant. (*Id.* at p. 1568.) After the latter settlement was announced and after determining that he had not been injured by the conduct alleged in the complaint, the plaintiff propounded extensive discovery regarding the merits of the complaint and requested documents from the California Department of Insurance under the California Public Records Act (Gov. Code, § 6250 et seq.). (*First American,* at pp. 1569–1570, 1576–1577.) The plaintiff later moved for an order compelling the defendants to provide the names and addresses of potential class members to a third party administrator, and sought approval of a notice

informing those individuals of the pending action and the need for a new class representative. (*Id.* at p. 1571.) The trial court granted the motion, apparently based on its determination that the plaintiff initially had believed in good faith that he was a class member. (*Id.* at p. 1572.) The trial court did not expressly apply the weighing test from *Parris, supra*, 109 Cal.App.4th 285. (*First American, supra*, at p. 1576.)

We concluded that the potential for abuse of the class action procedure greatly outweighed the parties' rights under the circumstances and that to allow precertification discovery under the circumstances would be an abuse of discretion. (*First American, supra*, 146 Cal.App.4th at pp. 1576–1577.) We stated that Proposition 64 was enacted to prevent abuses of the UCL by private attorneys who filed lawsuits despite the fact that they had no client who had been injured in fact. (*First American, supra*, at p. 1577.) We stated, "[w]e cannot permit attorneys to make an 'end-run' around Proposition 64 by filing class actions in the name of private individuals who are not members of the classes they seek to represent and then using precertification discovery to obtain more appropriate plaintiffs." (*Ibid.*) We weighed this potential for abuse of the class action procedure against the parties' rights under the circumstances. We stated that the plaintiff's interest in obtaining a proper plaintiff was nonexistent because he was not a class member and had no cognizable interest in the litigation. We acknowledged that potential class members might have an interest in pursuing the class action, but stated that there was no indication that class members would be denied relief if the class action did not proceed on their behalf. We noted that the two settlements provided full refunds for the alleged victims and that the plaintiff did not argue that any future action by class members would be time-barred. Accordingly, we concluded, "the potential for abuse of the class action procedure is overwhelming, while the interests of the real parties in interest are minimal." (*Ibid.*)

*Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627 [57 Cal.Rptr.3d 358] affirmed the sustaining of a demurrer against a complaint for unfair business practices in which the plaintiff failed to allege that it had standing after Proposition 64. (*Cryoport, supra*, at p. 629.) *Cryoport* held that the plaintiff waived any argument that it was entitled to conduct discovery to identify a new class representative because it failed to move for such discovery in the trial court and failed to adequately articulate its argument on appeal. (*Id.* at p. 633.) The Court of Appeal nonetheless addressed the argument on its merits. *Cryoport* stated that the potential for abuse of discovery was great because the plaintiff clearly had no interest in the litigation, and that the class members' interests were minimal because the plaintiff had not shown that maintenance of the class action was their only

avenue for relief.[12] *Cryoport* therefore concluded that the potential for abuse of the class action procedure far outweighed the interests of the real parties in interest and that to allow precertification discovery under the circumstances would be an abuse of discretion. (*Cryoport*, at p. 634, citing *First American, supra*, 146 Cal.App.4th at p. 1577.)

*CashCall, supra*, 159 Cal.App.4th 273, involved a class action for invasion of privacy against a lender that was alleged to have secretly monitored its telephone calls with the plaintiffs. The defendant admitted in discovery that it had secretly monitored at least 551 calls, but did not disclose the names of those customers. (*Id.* at pp. 279–280.) After determining that their calls had not been monitored, the plaintiffs substituted new class representatives in their place. (*Id.* at pp. 278–279.) The new class representatives then determined that their calls had not been monitored either, and moved for an order compelling the defendant to identify potential class members whose calls had been monitored without their consent and who could serve as class representatives. The trial court granted the motion and ordered the defendant to provide the names and addresses of potential class members to a third party administrator who would serve them notices. (*Id.* at pp. 282–283.) *CashCall* concluded that the trial court properly applied the weighing test from *Parris, supra*, 109 Cal.App.4th 285, and did not abuse its discretion in granting the motion. (*CashCall, supra*, 159 Cal.App.4th at p. 299.)

■ *CashCall* rejected the argument that, in cases where the plaintiffs have never been class members, a bright-line rule precluding precertification discovery to identify class members should apply and the weighing test from *Parris, supra*, 109 Cal.App.4th 285, should be inapplicable. (*CashCall, supra*, 159 Cal.App.4th at pp. 285–286, 290–291.) Citing the general rule liberally allowing amendments of complaints to substitute new plaintiffs with standing (*id.* at pp. 287–288), *CashCall* stated that a class action plaintiff without standing should be allowed to move for, and potentially obtain, precertification discovery to identify potential class members (*id.* at p. 290). *CashCall* stated that class action plaintiffs who never had standing should not necessarily be treated less favorably than class action plaintiffs who once had but then lost standing, and that the *Parris* weighing test should apply in both circumstances. (*CashCall, supra*, at p. 290.)

Applying the weighing test, *CashCall* stated that the alleged secret nature of the call monitoring, the potential bar of the statute of limitations, and the

---

[12] The Court of Appeal in *Cryoport* distinguished its prior opinion in *Best Buy, supra*, 137 Cal.App.4th 772, on the basis that the plaintiff in *Best Buy* had standing as a class member but could not serve as both class representative and class counsel. (*Cryoport Systems v. CNA Ins. Cos., supra*, 149 Cal.App.4th at pp. 633–634.) *Cryoport* stated, "*Best Buy Stores* does not stand for the proposition that a plaintiff with no interest in the action has a right to discovery to find a substitute plaintiff to keep the action alive." (*Id.* at p. 634.)

absence of any other pending action or enforcement proceeding against the defendant made it likely that the class members would be denied relief if precertification discovery were not allowed and the class action were dismissed.[13] (*CashCall, supra*, 159 Cal.App.4th at p. 293.) *CashCall* noted that the action involved the class members' important statutory and constitutional rights to privacy. (*Id.* at p. 294.) Accordingly, *CashCall* concluded that it was likely that significant rights of the class members would be adversely affected if the requested discovery were denied. (*Ibid.*)

*CashCall* stated that "[t]he trial court also implicitly, if not expressly, considered the potential for abuse of the class action procedure were the plaintiffs' motion for precertification discovery granted. (*Parris, supra*, 109 Cal.App.4th at p. 301)," and noted the defendant's argument that the discovery might allow the plaintiffs' attorneys to make an " 'end run' " around the UCL's standing requirements. (*CashCall, supra*, 159 Cal.App.4th at p. 294.) Although it was not clear how the plaintiffs first learned of the defendant's secret call monitoring (*ibid.*), *CashCall* stated that the original plaintiffs and the substituted plaintiffs "presumably had good reason to suspect their calls may have been secretly monitored," and "did not lack any arguable possibility of standing at the time the class action complaint was filed" (*id.* at p. 295). *CashCall* stated further that the plaintiffs could not have learned that they did not have standing until the defendant informed them that their calls had not been monitored. (*Ibid.*) Accordingly, *CashCall* stated that the trial court reasonably concluded that the potential for abuse of the class action procedure was insignificant and that the trial court did not abuse its discretion in ordering the discovery. (*Ibid.*)

### 3. *Safeco and First National Have Shown No Abuse of Discretion*

A trial court ruling on a motion for precertification discovery to identify potential class members must "expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances." (*Parris, supra*, 109 Cal.App.4th at p. 301.) We review the ruling on such a motion for abuse of discretion. (*CashCall, supra*, 159 Cal.App.4th at pp. 284–285; *First American, supra*, 146 Cal.App.4th at p. 1573.) "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion

---

[13] *CashCall* distinguished *First American, supra*, 146 Cal.App.4th 1564, on these grounds. (*CashCall, supra*, 159 Cal.App.4th at pp. 298–299.)

unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 [67 Cal.Rptr.3d 228].)

■ *First American, supra*, 146 Cal.App.4th 1564, does not stand for the proposition that a plaintiff who was never a class member in a UCL action necessarily is not entitled to conduct precertification discovery to identify a substitute class representative. Although we emphasized the potential for abuse of the class action procedure in those circumstances (*First American*, at pp. 1566, 1573, 1578), we did not establish any categorical rule against precertification discovery. Instead, we weighed the potential for abuse of the class action procedure against the rights of the parties and decided that to allow precertification discovery in the particular circumstances of that case would be an abuse of discretion. (*Id.* at pp. 1576–1577.) *CashCall, supra*, 159 Cal.App.4th 273, held that there was no bright-line rule against allowing plaintiffs who never had standing to conduct precertification discovery for the purpose of identifying potential class members with standing. (*Id.* at pp. 285–286, 290–291.) We agree, and conclude that the weighing test from *Parris, supra*, 109 Cal.App.4th 285, applies in UCL cases, as in other cases.

■ The filing or maintenance of a class action in circumstances where the plaintiff cannot allege standing in good faith is an abuse of the class action procedure. Particularly in light of the voters' expressed intention "to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact" (Prop. 64, § 1, subd. (e)), the absence of a reasonable, good faith belief that the plaintiff had standing under the law in effect at the time the plaintiff was first named as a plaintiff ordinarily should compel the denial of a motion for precertification discovery. The potential for abuse of the class action procedure in those circumstances is overwhelming. In other circumstances, however, we leave it to the sound discretion of the trial court to determine whether the potential for abuse outweighs the rights of the parties in the particular circumstances of each case.

The trial court here expressly weighed the potential for abuse of the class action procedure against the rights of the parties. It acknowledged our concern expressed in *First American, supra*, 146 Cal.App.4th 1564, that plaintiffs should not be allowed to undermine the standing requirements of Proposition 64. It stated that Karnan had abused the discovery process by continuing to pursue discovery on the merits of her claims even after she knew that she had no standing with respect to the allegations in the complaint, and acknowledged defendants' argument that to allow discovery for the purpose of identifying a substitute plaintiff would sanction that abuse. The court also stated that because she was not a class member, Karnan had no interest in the continued prosecution of this action.

The trial court stated with respect to the rights of the class members that without a detailed breakdown of charges, there was no way for an insured to know that a coverage gap had resulted in a premium surcharge.[14] It also stated that many class members' individual claims would be barred by the four-year statute of limitations (Bus. & Prof. Code, § 17208), and noted that there was no other action or enforcement proceeding that might provide relief to the class members. The court stated further, "counsel has presented a strong offer of proof, supported by what appears to be direct evidence, to the effect that the defendant had a surcharge policy based on a prior lack of insurance," as alleged in the complaint. The court therefore concluded that "the rights of the putative class members in this case outweigh the past, and the potential for further, abuse of the discovery process," and granted the motion for precertification discovery.

■ We conclude that the trial court did not abuse its discretion in this regard. The court reasonably concluded that the rights of the class members in these circumstances are substantial. As was the case in *CashCall, supra,* 159 Cal.App.4th 273, and unlike *First American, supra,* 146 Cal.App.4th 1564, the circumstances here make it likely that class members would be denied relief if precertification discovery were not allowed and the class action were dismissed. Those circumstances include the difficulty for an individual class member of determining whether his or her lack of prior insurance or lack of continuous coverage resulted in a premium surcharge, the potential statute of limitations bar, and the absence of any other action or enforcement proceeding that could provide relief. The trial court has considerable discretion in evaluating the evidence and making these determinations. Moreover, the court's determination that plaintiffs' counsel had presented a strong offer of proof on the merits of the complaint also supports the conclusion that the rights of the class members are substantial.

The court did not find that Karnan or her attorneys had no reasonable, good faith belief that she had standing when she was first substituted as a plaintiff, but instead concluded that she "may have been substituted as the named plaintiff in good faith." The argument by Safeco and First National that the

---

[14] Safeco and First National request judicial notice of 48 different documents for the purpose of showing that the fact that insurers could have been considering the lack of prior coverage or lack of continuous coverage in rate setting was well publicized. Those items include newspaper articles, press releases, legislative records, records from a Department of Insurance rulemaking file, portions of defendants' class plan applications to the Department of Insurance together with the department's approval letters, a Department of Insurance bulletin issued to insurers, and court records. None of those documents was presented to the trial court. A reviewing court generally should not take judicial notice of evidence that was not presented or available to the trial court. Rather, absent "exceptional circumstances," a reviewing court should consider only the record before the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Absent a showing of exceptional circumstances, we deny the request as to those 48 items.

evidence compels the conclusion that Karnan and the class members knew or should have known that their premiums might be affected by the absence of prior coverage or a lapse in coverage is unpersuasive,[15] as is their argument that the trial court's references to abuse of the "discovery process" indicate that it failed to consider the potential for abuse of the "class action procedure."[16] Although the potential for abuse of the class action procedure is apparent, the trial court's conclusion that the rights of the class members in these circumstances outweigh the potential for abuse of the class action procedure is entitled to considerable deference. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Defendants have shown no abuse of discretion.

Safeco and First National also contend Karnan is not entitled to precertification discovery to identify potential class members because any future amendment of the complaint to substitute a new class representative would be untimely in light of the prejudice they have suffered in having to defend this action for several years despite the absence of a proper plaintiff. Defendants have not shown that the liberal policy in favor of allowing the amendment of a complaint necessarily must yield to their claim of prejudice. We will leave the decision whether to grant a future motion for leave to amend the complaint to the sound discretion of the trial court, and conclude only that defendants have not shown that the court was compelled to deny the motion for precertification discovery on this basis.

---

[15] Safeco and First National expressly "do not admit" that the lack of prior insurance or lack of continuous coverage resulted in a premium surcharge. Yet they argue that, if that were true, Karnan and the class members were on notice of that fact and it should have been obvious to them from any premium increase that they experienced after a coverage lapse, advice they received or could have received from insurance agents, the insurers' rate filings and class plans filed with the Department of Insurance, and media reports concerning the alleged practice. The trial court concluded based on the evidence presented that the insureds could not determine from the information available to them whether they had been surcharged. Substantial evidence supports that factual finding. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 [76 Cal.Rptr.3d 250, 182 P.3d 579] [a reviewing court applying the abuse of discretion standard reviews any factual findings for substantial evidence].)

[16] The trial court in its order granting the motion for precertification discovery stated, "the court must weigh the 'potential abuses of the class action procedure that may be created if the discovery is permitted . . . against the rights of the parties under the circumstances,' " quoting from *Parris, supra*, 109 Cal.App.4th at page 301. In discussing the potential for abuse in this case, it stated that Karnan's continued pursuit of discovery even after she knew that she had no standing was an "abuse of the discovery process," and stated in conclusion that "the rights of the putative class members in this case outweigh the past, and the potential for further, abuse of the discovery process." Contrary to defendants' argument, this does not indicate that the trial court failed to properly apply the weighing test, but only that the court considered the particular abuse of the class action procedure in this case to be an abuse of the discovery process by the class representative.

## *DISPOSITION*

The petition is denied. The trial court is directed to vacate its orders of January 5 and 14, 2009, and conduct further proceedings not inconsistent with the views expressed in this opinion. The stay of trial court proceedings heretofore issued by this court shall be vacated as of the date of the filing of the remittitur herein. Karnan is entitled to recover her costs in this appellate proceeding.

Klein, P. J., and Aldrich, J., concurred.

Petitioners' petition for review by the Supreme Court was denied July 15, 2009, S173602. George, C. J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.