Filed 6/26/24  Nelson v. Bannon CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRIS NELSON, | B319433 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV48295) |
| v. | |
| EMILY BANNON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge.  Reversed and remanded.

Matthew Strugar for Defendant and Appellant.

Clark Hill, Bradford G. Hughes, Richard H. Nakamura, and Tiffany B. Hunter for Plaintiff and Respondent.

———————————————

A self-described "well-established record producer" and seller of collectible musical instruments sued his ex-girlfriend, a voice actress, for posting a story on Instagram recounting various instances of him mistreating others, ranging from romantic partners (including herself) to customers, to individuals he targeted based on their race.

He sued her for defamation and related claims, and she filed an anti-SLAPP motion. The trial court denied the motion on the sole ground that the Instagram story did not qualify as a "protected activity" under the anti-SLAPP statute, and the ex-girlfriend appealed. We agree that the court's conclusion was error, and reverse and remand for it to determine the music producer's probability of prevailing.

## FACTS AND PROCEDURAL HISTORY

### I. FACTS

Plaintiff Chris Nelson is a music producer who owns a recording studio and sells collectible musical instruments. Nelson has worked with "[n]umerous well-known artists and musicians." He has also sold "over 2,000" pieces of musical equipment online, and was a seller with "over 1,400 reviews" from buyers. Defendant Emily Bannon—a voice actor—lived with and dated Nelson in 2018 and 2019, when she was 23 and he 34.

In 2020, Bannon spoke with various people who had been acquainted with Nelson, ranging from business investors to romantic partners, about their negative experiences with him. Bannon then posted an Instagram story about Nelson containing roughly 30 slides that recounted her own and others' bad experiences with him. Bannon's Instagram following was about 20,000 at the time. Bannon then agreed to have musician Phoebe

2

Bridgers share the Instagram story on Bridgers' own Instagram account, which had about 500,000 followers.

Bannon's Instagram story began with a slide stating, "I stand in solidarity with those coming forward with allegations against Chris Nelson . . . owner of Sound Space Studio . . . ." Bannon claimed that she had "been personally contacted by such a large quantity of women and men claiming to have either been abused or robbed by [Nelson] that [she] felt impelled to state what [she] know[s]."

The slides recounted some of the "diverse and numerous accusations" about Nelson, some of which Bannon stated had been "floating around the internet for about a decade." Screenshots of messages from unidentified sources showed such allegations as Nelson selling replica items as originals, manipulating young women into recording music with him and then refusing to release the recordings to them, hacking romantic partners' accounts, and attempting to steal from someone's elderly father.

Bannon accused Nelson of getting her pregnant and saddling her with $10,000 of medical debt from complications. She further accused him of unintentionally impregnating other women on at least four other occasions.

One slide contained a "warning" that Bannon had "heard . . . from many people" that Nelson "conducted business under different fake names for years." Bannon also reported that Nelson had robbed individuals, who she identified by first name only.

Bannon stated that Nelson has told others that he provoked a Latinx man with a racist slur before beating him to death.

3

She invited anyone who "ha[s] information that might be useful to survivors [to] feel free to get in touch."

## II.    PROCEDURAL HISTORY

On February 16, 2021, Nelson filed his operative first amended complaint against Bannon for defamation and related claims based on her Instagram story about him.

Bannon filed an anti-SLAPP motion to strike, arguing that Nelson's claims "arise[] from [Bannon's] exercise of free speech in a public forum on a matter of public interest" (425.16, subd. (e)(3)).

After briefing  and a hearing , the trial court denied Bannon's motion because her statements did not qualify as "protected activity."  The court reasoned that although the statements were made in a "public forum,"  Bannon's purpose was "to ostracize" and "to air grievances with [Nelson]," and her statements were "not . . . part of a larger discussion relating to consumer protection, the '#MeToo' movement, or other issues of public interest."  The court stated that although Bannon "may be correct in arguing that the #MeToo movement and related discussions of . . . men abusing their power [are] matters of public interest, [her] statements failed to connect her allegations within this context."  The trial court did not reach the second prong of the anti-SLAPP analysis (probability of prevailing).

Bannon filed a timely notice of appeal.

## DISCUSSION

Bannon argues the trial court erred in concluding her speech was not protected activity within the meaning of the anti-SLAPP law.  We review this issue de novo.  (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250 (*Geiser*).)

4

# I. PERTINENT LAW

## A. Anti-SLAPP Law, Generally

The anti-SLAPP statute provides an expedited procedure to dispose of meritless lawsuits brought to chill the valid exercise of the constitutionally protected rights of speech or petition. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; *Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 928; see also *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 883 ["purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights"].) The Legislature has declared that the statute "shall be construed broadly" to that end. (§ 425.16, subd. (a).)

"[A] trial court tasked with ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065), and, if so, (2) has the nonmoving party 'established . . . a probability that [he] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' (§ 425.16, subd. (b)(1); *Nevallier v. Sletten* (2002) 29 Cal.4th 82, 93-94)?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.) For both prongs of the analysis, "'[t]he court considers the pleadings and evidence submitted by both sides.'" (*Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC* (2022) 76 Cal.App.5th 651, 664.)

## B. "Protected Activity" Under Anti-SLAPP

The anti-SLAPP statute defines "protected activity" to include "any written statement . . . made in a place open to the

5

public or a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)) or "any other conduct in furtherance of" the constitutional rights of petition or free speech "in connection with a public issue or an issue of public interest (*id*., subd. (e)(4) [the "catchall provision"]). Both these categories "are subject to the limitation that the conduct must be in connection with an issue of public interest." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.)

## II. ANALYSIS

Bannon's Instagram post qualifies as a "protected activity" under the anti-SLAPP law. The parties do not dispute that Instagram is a "public forum" for the purpose of section 425.16, subdivision (e)(3). (See *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 (*Jackson*); *Cross v. Facebook, Inc.* (2017) 14 Cal.App.5th 190, 199.) This appeal turns on whether Bannon's Instagram post was made "in connection with an issue of public interest."

In *FilmOn Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*), our Supreme Court articulated a two-step test to determine whether speech or conduct was made in connection with an issue of public interest. First, we ask whether the challenged activity, considered in its context, "may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser*, *supra*, 13 Cal.5th at pp. 1253-1254; see *FilmOn* at p. 149.) Second, we ask what "functional relationship" exists between the speech or conduct and the public conversation about some matter of public interest; "the statement must in some manner itself contribute to the public debate." (*FilmOn*, at pp. 149-150.) Context (including "speaker, audience, and purpose") is an important consideration in both steps of this

analysis. (*Id*. at pp. 148, 150; *Geiser*, *supra*, 13 Cal.5th at pp. 1253-1254.)

**A. Bannon's statements implicated public issues.**

Regarding the first step—whether speech or conduct "may reasonably be understood to implicate a public issue"—*FilmOn* observed that defendants "virtually always" "succeed in drawing a line . . . connecting their speech to an abstract issue of public interest." (*Geiser*, *supra*, 13 Cal.5th at pp. 1253-1254; *FilmOn*, *supra*, 7 Cal.5th at p. 150; cf. *Geiser*, at p. 1250 [but "virtually always" does not mean "always"].) Bannon is no exception. Her Instagram story implicated the issue salient in the #MeToo era of men, particularly men in the entertainment industry, abusing their positions of power. It also implicated consumer protection concerns.

Both the context and the content of Bannon's post support these conclusions. Nelson has a public presence; he is, by his own account, a "respected expert musical instrument collector" whose "expertise . . . is sought by collectors . . . across the United States and abroad. He is also a "well-established record producer" who has worked with "[n]umerous well-known artists and musicians."[1] (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924

---

[1]	In her opening brief, Bannon cited various media publications that concern Nelson's defamation lawsuits against other individuals. Because these publications were not presented to the trial court and are not part of the record on appeal, we decline to consider them. (See *Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 834, fn. 14 ["A reviewing court generally should not take judicial notice of evidence that was not presented or available to the trial court"].)

(*Rivero*) [statement about person in the public eye may implicate a "public issue"]; *Jackson, supra,* 10 Cal.App.5th at p. 1254 [same]; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 [same]; see *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 230, 238 [published article about well-known political consultant's alleged abuse of his former wives concerned "public issue"].) Nelson has "completed over 2,000 successful transactions . . . with over 1,400 reviews" from buyers, and Bannon's post charged him with selling replica instruments as originals and using "fake names." (*Rivero*, at p. 924 [statements that could affect large number of people beyond direct participants involved "public issue"]; *Xu v. Huang* (2021) 73 Cal.App.5th 802, 814 [commercial nature is relevant "contextual cue" in determining whether speech is protected]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 899 [consumer information may be viewed as concerning matter of public interest]; *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1141-1142, 1146-1147 [mother of woman who had been romantically involved with owner of forensic business posted statements on "RipOff Report" website calling him "a criminal and deadbeat dad" concerned "public issue" in that the statements "warn[ed] consumers about his trustworthiness"].)

Bannon's Instagram post served to document and warn others about various kinds of misconduct by Nelson in both his romantic and business dealings and request further information from "survivors" of his abuse. (*FilmOn, supra,* 7 Cal.5th at p. 140 [the audience and the purpose of the speech are pertinent factors].) The trial court's ruling and Nelson's respondent's brief focus on characterizing Bannon's statements as "personal

grievance[s]" motivated by "revenge."[2]  This is precisely the mode of analysis the Court in *FilmOn* intended to combat with its two-part test.  (*FilmOn*, *supra*, 7 Cal.5th at p. 149 [decisions focusing on "discerning a single topic of speech" were "less than satisfying" because "speech is rarely 'about' any single issue"].)  That her statements may have stemmed from her own resentment based on personal experience is not relevant in determining whether her statement implicated a public issue.  (*Geiser*, *supra*, 13 Cal.5th 1238, 1254 ["*FilmOn*'s first step calls for an objective inquiry, without deference to the movant's framing or personal motivations.  A court . . . should take the position of a reasonable, objective observer"].)  Indeed, "those who speak on public issues are often driven to do so by circumstances that affect them personally."  (*Ibid*.)

### B. Bannon furthered the public discussion.

"'[I]t is not enough that the statement refer to a subject of . . . public interest; the statement must in some manner contribute to the public [discussion].'"  (*FilmOn*, *supra*, 7 Cal.5th at p. 150-151, quoting *Wilbanks, supra,* 121 Cal.App.4th at p. 899.)  What it means to contribute to the public discussion may "differ based on the state of public discourse at a given time."  (*FilmOn*, at pp 150-151.)  "We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine

---

[2]     In her opening brief, Bannon also refers to trial court rulings from actions asserted by other individuals against Nelson.  Although Bannon cites a request for judicial notice, no such request was filed in this appeal.  In any case, the lower court's rulings in other lawsuits against Nelson are not binding on us and we decline to consider them in conducting our analysis.

9

whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue on of public interest." (*Id.* at p. 151 see *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 375 [defendant's conduct "directly related" to issue of public interest because it "served th[e] interests" of preventing child abuse].)

Through her Instagram story, Bannon "participated in" discourse concerning men in power taking advantage of women and relating to consumer protection. In highlighting various instances of Nelson's alleged misconduct, Bannon made clear that she was relating not only her own experiences but those of others. (See *FilmOn*, *supra*, 7 Cal.5th at p. 152 [content of speech may "prove illuminating" when considering "speech and its relationship to the matters of public interest"]; *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 738 [activity occurring in context of ongoing controversy, dispute, or discussion, may qualify as "public issue"].) Bannon is a voice actress, and she targeted hundreds of thousands of followers, both her own and musician Phoebe Bridgers'. The "audience [she] sought" was thus people involved in, or to some extent interested in, the entertainment and music industries. Given that her posts involved mistreatment of musicians and consumers as well as romantic partners, this context shows the requisite "wedding of content and context." (*FilmOn*, at p. 154.) Bannon also sought input from others, urging them to contact her with their stories, which further supports our conclusion that her post occurred in the context of an ongoing discussion.

The trial court did not reach the second prong of the anti-SLAPP analysis to determine whether Nelson met his burden of establishing a probability of prevailing on his claims.

10

We therefore remand for the trial court to conduct that analysis. (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 58.)

## DISPOSITION

The order is reversed and remanded for further proceedings consistent with this opinion.  The parties to bear their own costs on appeal.

LEE, J.[*]

WE CONCUR:

BAKER, Acting P. J.

KIM, J.

---

[*]     Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.